JULIUS DORENFIELD, JR., V. THE STATE OF TEXAS, EX. REL.
JAMES V. ALLRED, ATTORNEY GENERAL.

No. 6734.   Decided May 30, 1934.
Motion to certify answer immediately overruled June 8, 1934.
(73 S. W., 2d Series, 83.)

*White, Taylor & Gardner,* and *Ocie Speer,* all of Austin, for appellant.

The tenure of the position or office as member of the Texas Relief Commission is not fixed by law, and the appellee, Holliday, held said position at the will of the Speaker of the House of Representatives of Texas, who appointed him, and was removed at the pleasure of the appointing power, the power of removal being incident to the power of appointment. Kratzer v. Commonwealth (Ky.), 15 S. W. (2d) 473; Keenan v. Perry, 24 Texas, 264; Wright v. Gamble, 136 Ga., 376, 71 S. E., 795, 35 L. R. A. (N. S.) 868; Ex parte Hennen, 13 Peters, (38 U. S.), 230.

*James V. Allred,* Attorney General, *Elbert Hooper, Scott Gaines,* Assistants Attorney General, and *Dan Moody* and *R. L. Batts,* both of Austin, for appellees.

Since Robert L. Holliday is a State officer as that term is used in the State Constitution, removal proceedings against him must necessarily conform to the requirements of the Constitutional provision, and the Honorable Coke R. Stevenson, Speaker of the House of Representatives, was therefore not legally vested with power and authority to remove the said Holliday from the office of member of the Texas Relief Commission. Texas Constitution, Art. 15, sec. 7; Kimbrough v. Barnett, 93 Texas, 301, 55 S. W., 120; State v. Truman, 330 Mo., 1018, 64 S. W. (2d) 106; Webb County v. Board of School Trustees of Laredo, 95 Texas, 131, 65 S. W., 878; Diffie v. Cowan, 56 S. W. (2d) 1097; Bonner v. Belsterling, 104 Texas, 432, 138 S. W., 571; R. S., Art. 5961.

The Constitution requires the Legislature to make provisions for the trial and removal of all State officers, and this having been done, the methods provided are exclusive. The act of the Speaker of the House of Representatives in attempting to remove the said Holliday from membership on the commission was wholly ineffectual and void. Constitution of Texas, Art. 15, secs. 2, 6, 7; Bill of Rights, sec. 19; and authorities cited above.

MR. JUSTICE GREENWOOD delivered the opinion of the Court.

For the purposes of this opinion, the statement of the nature and result of this suit is adopted from the Brief for Appellant Dorenfield, in the following words:

"This is a quo warranto proceeding instituted by the Attorney General of the State of Texas to oust Appellant Julius Dorenfield, Jr., from the office of member of the Texas Relief Commission, to which suit Appellee R. L. Holliday is a party. Upon a trial before the District Court, judgment was rendered in favor of the State of Texas, Appellee, ousting Appellant Julius Dorenfield, Jr., from said office and finding that Respondent Holliday who had been previously appointed to such office, had not been removed by any lawful means, and confirming the title of said Appellee Holliday to said office.

"From said order, Appellant Dorenfield duly gave notice of appeal, perfected his appeal by filing the proper supersedeas bond, and taking said cause to the Honorable Court of Civil Appeals for the Third Supreme Judicial District of Texas for review and correction.

"Upon motion of the Appellant Dorenfield, said cause was advanced by the Court of Civil Appeals and the questions involved in this cause were certified to this Honorable Court.

"The questions certified for decision, are:

" '1. Was the Honorable Coke R. Stevenson, in his capacity as Speaker of the House of Representatives, legally vested with the power and authority to remove the Respondent Robert L. Holliday, from his office as a member of the Texas Relief Commission?

" 'Should this question be answered in the affirmative, then we certify the following additional question.

" 'Was the action of the Honorable Coke R. Stevenson, as in this certificate detailed, legally effectual in removing Respondent Holliday from said office?' "

The material facts, controlling a proper determination of

the question certified, are recited in the certificate of the Court of Civil Appeals as follows:

· "On November 3, 1933, Mr. Holliday was appointed by the Hon. Coke R. Stevenson, Speaker of the House of Representatives, as one of the three members of the Texas Relief Commission authorized to be appointed by the Speaker of the House of Representatives under Sec. 3 of Sec. 11 of Senate Bill 46, Chap. 37, page 118, of the General Laws of the First Called Session of the 43rd Legislature creating such Commission. He thereupon promptly qualified by taking the requisite oath of office, and commission was duly issued to him, he having paid the requisite fee therefor. He at once entered upon the duties of his office as such commissioner, and continued so to serve, attending all of the meetings of the Commission, up to April 5, 1934, when Mr. Stevenson, in his capacity as Speaker of the House of Representatives, addressed a communication to the Secretary of State, reading (formal parts omitted):

" 'By virtue of the authority vested in me under Section 3 of Section 11 of Senate Bill No. 46, Acts of the First Called Session of the 43rd Legislature, authorizing me to remove any member of the Texas Relief Commission heretofore appointed by me, for cause, I have removed Hon. R. L. Holliday of El Paso county, Texas, as a member of said commission.

" 'The removal of Mr. Holliday has been requested of me by numerous citizens and by officials of organizations in El Paco county who claim to represent more than 4,000 members, and upon investigation of the complaints made, I have become convinced that adequate cause exists for the removal of Mr. Holliday. In order to fill the vacancy on the Texas Relief Commission, created by the removal of Mr. Holliday, I have appointed Hon. Julius Dorenfield, Jr., of Amarillo, Texas, as a member of the Texas Relief Commission and request that you issue to him his commission as such member at once.'

"Thereupon Mr. Dorenfield took the requisite oath of office, and was issued a commission as a member of said Texas Relief Commission to succeed Mr. Holliday. All the legal prerequisites essential to Mr. Dorenfield's becoming a member of said Commission were performed, if the action of Mr. Stevenson was effectual to remove Mr. Holliday from said office. * * *

"Mr. Holliday has never been impeached nor removed from his aforesaid office by any character of judicial proceeding, and he has never resigned nor otherwise relinquished the office, but is still claiming it. The record is silent as to whether there was any notice given by Mr. Stevenson to Mr. Holliday, or any hearing or trial before him in connection with his action as

expressed in his above quoted letter to the Secretary of State. In this connection, however, it may be stated that the record shows that Mr. Stevenson sought to file in the trial court a petition of intervention, which was denied. This petition was copied in full in the answer of the respondent Dorenfield, but was stricken out upon exception. It sets forth various complaints by representatives of organized labor and others regarding Mr. Holliday's attitude, and certain newspaper articles condemnatory of Mr. Holliday's attitude and action as a member of the Commission. It also alleges that Mr. Holliday was fully advised of these complaints, and 'that he had full opportunity at all times to be heard on the merits of his side of the controversy, if any; that he made no effort to be heard or to do anything in connection with said matter, except that letters were received as aforesaid from two persons in El Paso, who claimed to be acting for him.' "

■ We answer to the certified questions that the Speaker of the House of Representatives was not legally vested with power and authority to remove respondent, Holliday, from his office as a member of the Texas Relief Commission; and, that the action of the Speaker as detailed in the certificate was wholly ineffectual to remove respondent.

The law necessitating the above answers is clear and plain. We find no conflict in the carefully considered authorities.

The voters of Texas, having adopted a constitutional amendment, authorizing the Legislature to cause bonds to be issued to furnish relief to needy and unemployed people, the Legislature by an amended act, under which respondent Holliday was appointed, provided for the creation of "The Texas Relief Commission." Chapter 37, Acts, First Called Session, 43rd Leg., page 118.

Section 3 of Section 11 of that Act, among other matters, provided:

"The Texas Relief Commission shall be composed of nine (9) members; the Chairman of the Industrial Accident Board and his successor in office, The President of the Texas Civil Judicial Council and his successor in office, three (3) to be appointed by the Lieutenant Governor, three (3) by the Speaker of the House of Representatives, one (1) by the Governor. The members of the present Texas Rehabilitation and Relief Commission shall perform the duties imposed upon the Texas Relief Commission herein created, until five members of the Texas Relief Commission have qualified by taking the Constitutional Oath of office, after which time, they shall have no

authority or rights hereunder. The Governor and his successors in office shall be ex-officio chairman of said Commission, but shall not be entitled to a vote, except in the case of a tie vote. The remaining members of the Commission shall take the Constitutional Oath of office, provided, however, that nothing in this Act shall prevent or preclude the reappointment of any one or more of the members now constituting the membership of the present Texas Rehabilitation and Relief Commission created by the terms of House Bill No. 897, Chapter 141, Acts of the Forty-Third Legislature, Regular Session; and provided, however, that in the event of the death, resignation, or removal for cause of any member of said Commission appointed by the Lieutenant Governor or the Speaker of the House of Representatives, the vacancy created thereby shall be filled by appointed (appointment) by the person making the original appointment."

By Section 1 of Section 11, the Legislature provided: "Said Commission shall cease to exist on August 26, 1935."

Respondent was one of the three members of the Commission who was duly appointed by the Speaker of the House of Representatives; and he qualified by taking the constitutional oath of office.

■ Language could hardly make plainer than does section one of the Act that respondent then became a state officer for a term to end on August 26th, 1935. The Legislature did not stop with giving respondent a certain tenure of his office, but it expressly declared its intent for the Speaker to name a successor to respondent after his removal, only in the event of his "removal *for cause.*"

Section 17 of Article 16 of the Constitution commanded respondent, he "being one of the officers within this State," to continue to perform the duties of his office until his successor was *duly* qualified. Part 2, Vernon's Annotated Texas Constitution, page 648.

The Constitution made it the mandatory duty of respondent to continue in his state office until August 26, 1935, he having meanwhile neither resigned nor died, until he was removed *after trial* under the provisions of some valid law. The exact language of the Constitution, after providing modes of removal of other specified officers is, "The Legislature shall provide by law for the trial and removal from office of all officers of this State, the modes for which have not been provided in this Constitution."

The certificate shows no basis whatever for any claim that

respondent was removed following a trial. Yet, a trial was an indispensable part of the constitutional mode for his removal as an officer of this State.

Certainly no other meaning can be reasonably ascribed to the Texas Constitution than as requiring trial to precede removal, under Section 7, Article 15, when under every mode of removal expressly provided by that article an officer is given the important safeguards of a trial, including formal written charges, notice, and an opportunity to be heard. Before a judgment of impeachment under Article 15, carrying with it removal from office, can be pronounced by the Senate, the Senators are put on oath or affirmation *"impartially to try* the party impeached." Before the Supreme Court can remove a District Judge, the latter is guaranteed by the same article the amplest safeguards of a trial. The formal presentment on oath of not less than ten practicing lawyers, lays the predicate for a cause "to be *tried* as soon as practicable." Even by address of two-thirds of both Houses, the Governor can not remove any judge until the written causes for removal are stated at length in the journals and have been "notified to the Judge so intended to be removed, and he shall be admitted to a *hearing* in his own defense *before* any vote for such address shall pass." Part 2, Vernon's Annotated Constitution, pages 570, 571, 572.

Section 24 of Article 5 of the Constitution reads:

"County Judges, county attorneys, clerks of the District and County Courts, justices of the peace, constables, and other county officers, may be removed by the Judges of the District Courts for incompetency, official misconduct, habitual drunkenness, or other causes defined by law, upon the cause therefor being set forth in writing and the finding of its truth by a jury."

It is thus seen that even when it comes to justices of the peace, constables, and county officers generally, the prescribed constitutional mode of removal protects their official tenures, unless terminated by resignations or deaths, until removed after formal written presentments, found by a jury to be true.

■ In discussing the procedure required to remove an officer under Section 24 of Article 5 Chief Justice Roberts, speaking for the Court, called same a "judicial inquiry" and said previous decisions would be followed construing like sections of earlier constitutions. The great Chief Justice summarized the previous decisions, including Gordon v. State, 43 Texas, 338, hereinafter referred to, as establishing that the power of removal "was not absolute or arbitrary, either as to the manner in which or the

causes for which it may be exercised; that the sheriff is entitled to notice of the charges against him, and an opportunity to be heard in his defense; that the charge must contain specific and not general allegations of incompetency or unfitness of the office; and that where a removal is made irregularly, or for insufficient cause, the order or judgment is subject to be revised on appeal." The effect of this decision was to give the officers named in section 24 the right to be heard and to seek exoneration before both District Judge and Supreme Court. Trigg v. State, 49 Texas, 673.

■ Corpus Juris states a universally recognized rule in this language: "Where the Constitution prescribes the mode for removing officers, the legislature may not authorize a removal in another mode." 46 C. J., sec. 145 (5), p. 984; 22 R. C. L., sec. 265, p. 561.

Should a statute admit of no other construction than that it undertook to authorize a removal from office of any officer of this State, such as respondent, the modes for which removal had not been prescribed by the Constitution, without providing for a "trial," it would be void, because in contravention of Section 7 of Article 15.

■ We further conclude that consistently with the entire context of the Constitution, dealing with removal from office, the Court cannot hold otherwise than that the word "trial" was used in Section 7 in its ordinary accepted meaning in law, which the Court has already declared to be "the *judicial* investigation and determination of issues between parties." Gulf, C. & S. F. Ry. Co. v. Muse, 109 Texas, 360, 361. The Supreme Court of Errors of Connecticut pointed out that a summary removal from office by a mayor was justified for the reason that the removed Connecticut officer was not by law entitled to a "trial." Avery v. Studley, Mayor, 74 Conn., 272, 50 Atlantic, 757.

■ With the Relief Act itself prescribing a definite term for respondent and stipulating for his removal "for cause," the governing law is succinctly expressed in Mechem on Public Officers, at pages 284 and 287, in Sections 445 and 454, as follows:

"Where, therefore, the tenure of the office is not fixed by law, and no other provision is made for removals, either by the Constitution or by statute, it is said to be 'a sound and necessary rule to consider the power of removal as incident to the power of appointment.'

"But this power of arbitrary removal is to be limited to these circumstances, and if the tenure is fixed by law, or if the officer is appointed to hold during the pleasure of some other officer or board than that appointing him, the appointing power cannot arbitrarily remove him. * * *

"Where the appointment or election is made for a definite term or during good behavior, and the removal is to be for cause, it is now clearly established by the great weight of authority that the power of removal cannot, except by clear statutory authority, be exercised without notice and hearing, but that the existence of the cause, for which the power is to be exercised must first be determined after notice has been given to the officer of the charges made against him, and he has been given an opportunity to be heard in his defense."

To the same effect see 46 C. J., sec. 146, p. 985; 22 R. C. L., sec. 266, p. 562.

The Supreme Court determined in Gordon v. State, 43 Texas, 339, that under language of a previous constitution like that in the present one, relating to removal of a public officer for cause, there could be no absolute power of removal such as the Speaker sought to exercise under the certificate in this case. In delivering the opinion in Gordon's case Mr. Justice Gould said:

"Former decisions of this Court have given a construction to the clause of the Constitution making sheriffs 'subject to removal by the judge of the District Court for said county for cause spread upon the minutes of the court' (Constitution, sec. 18, Art. 5; Davis v. State, 35 Texas, 118; Ex Parte King, id., 657).

"It has been held, and we think rightly, that this power of removal is not absolute or arbitrary, either as to the manner in which or the causes for which it may be exercised. The sheriff is entitled to notice of the charges against him and to an opportunity to be heard in his defense. * * * 'General allegations of incompetency' or unfitness constitute no sufficient cause. Some official delinquency or, we will add, some act or default or occurrence since his election, showing his unfitness for the office, must be alleged against him. * * * These principles are substantially laid down in the cases referred to and are believed to give the proper construction to this clause of the Constitution, giving some weight to every part, and at the same time, between two constructions, *inclining to that in harmony with other parts of the Constitution and with the rules of the common law.* (Italics ours.) (Cooley's Const. Lim., 58-60; Bennett v. Ward, 3 Caines, 259.)"

Gordon's case follows the generally accepted views. (22 R. C. L., sec. 282, p. 571; 46 C. J., sec. 148 (2), p. 986.

Our answer to each of the questions propounded is "No," and will be certified to the Honorable Court of Civil Appeals.

### ON MOTION TO CERTIFY ANSWERS IMMEDIATELY.

PER CURIAM.—Relator has filed a motion praying that the Court immediately notify the Court of Civil Appeals for the Third Supreme Judicial District of its decision made May 30, 1934, in answer to questions certified by said Court of Civil Appeals. The motion is based upon that part of Article 1759, Revised Civil Statutes of 1925, which provides in substance that the opinion rendered by the Supreme Court on the record and certified question of law presented shall be the law on the question involved until said opinion shall have been overruled by the Supreme Court or abrogated by legislative enactment, and that the Court of Civil Appeals shall be governed thereby, and further, that after the question is decided the Supreme Court shall immdiately notify the Court of Civil Appeals of its decision.

■ This article of the statutes must be read and construed in connection with Article 1762 which gives to a party to a cause the right to file a motion for rehearing "within fifteen days from the date of entry of the judgment or decision of the court, and not later." An opinion rendered in answer to certified questions is a decision of the court within the meaning of that article.

It has been the practice for many years to permit the filing of motions for rehearing within the fifteen day period prescribed by the statute as well in causes in which questions certified by courts of civil appeals are answered as in causes in which judgments are rendered here. For the sake of orderly procedure, and because two different courts should not at the same time have jurisdiction of a particular issue or question in a case, Article 1759 is construed to mean that the Supreme Court shall notify the Court of Civil Appeals of its decision in answer to a certified question immediately upon the expiration of the fifteen day period allowed for the filing of a motion for rehearing, in the event no motion is filed, and immediately following its action upon the motion, in the event a motion filed within the time specified is overruled.

■ It is suggested in the motion filed by Relator that the Respondent Dorenfield may take advantage of the full periods of time allowed for the filing of motion for rehearing here,

for the filing of motion for rehearing in the Court of Civil Appeals following a decision of the case there, and for the filing of an application for writ of error, and thus delay the final disposition of the case, and it is alleged in the motion that during all of such time said Respondent will continue to exercise the powers and duties of a member of the Texas Relief Commission. But, in view of the decision which has been made herein that the Speaker of the House of Representatives was not legally vested with the authority to remove Respondent Holliday from his office as a member of the Texas Relief Commission, and that the action of the Speaker as detailed in the certificate was wholly ineffectual to remove him, and further in view of serious questions that might be raised as to the validity of any action of the Texas Relief Commission dependent upon the vote of Respondent Dorenfield as a member, it is not to be assumed that Respondent Dorenfield would pursue such course of delay as is suggested in the motion, or would attempt to act as a member of the Commission; and it is not to be contemplated that the Texas Relief Commission would permit him to act, or recognize him, as a member, or that it would refuse to recognize Respondent Holliday as a member.

The Court feels assured that Respondent Dorenfield and his attorneys will not unduly protract this litigation, by the statement of his attorneys in their motion to advance and certify that "the question involved is an important question, and as this court judicially knows, it is *of vital importance to the people of the State of Texas that said Relief Commission function efficiently, and it cannot do so until this question is determined once for all.*" (Italics ours.)

■ After the final decision of this case by the Court of Civil Appeals there will be no period of delay for the filing of an application for writ of error. This Court acquired jurisdiction of the case through the certification of questions of law by the Court of Civil Appeals. The questions were not certified by the Court of Civil Appeals upon its own motion, but upon the motions of the Relator and the Respondent Dorenfield. The motion filed by the latter states in substance that the controlling question in the case is the right of the Speaker of the House of Representatives to remove his appointee for cause, and it requests that this question be certified because it is an important question which should be speedily decided by the Supreme Court. The Relator's motion to certify "adopts and approves the grounds and reasons contained in appellant's motion to advance and certify." In its certificate the Court of

Civil Appeals states that "all parties have moved to certify the controlling questions to your Honors, which motions were granted, in view of the importance of the questions involved, and the necessity for as speedy a final adjudication thereof as may be practical."

By these matters of record, therefore, it is shown that the Relator and the Respondent have in their motions to certify agreed that the case is controlled by the determination of the question as to the right of the Speaker to remove the Respondent Holliday from his office as a member of the Commission, and that the Court of Civil Appeals in granting the motions has certified that question, together with the question whether the action of the Speaker was legally effectual, as the questions which control the case. It is apparent that the answers which have been made to the questions are decisive of the entire case. The statutes provide that the Court of Civil Appeals shall be governed by such answers, that its judgment shall be in harmony with the decision of the Supreme Court in making the answers, and that such decision shall be binding upon the Court of Civil Appeals. Revised Civil Statutes, 1925, Articles 1759, 1851, 1854.

When parties to a case have thus by their filing of motions to certify obtained a decision of the Supreme Court upon the controlling questions in the case, they cannot take the same case (which, being the same case, is of course controlled by the same questions) again to the Supreme Court by filing an application for writ of error. They have elected one remedy, or one method of appeal, to obtain a decision of the questions of law, and should not be permitted thereafter to resort to another remedy or another method of appeal for the purpose of obtaining another decision of the same questions by the same court.

In Campbell v. Wiggins, 85 Texas, 451, 22 S. W., 5, it was held that a party to a cause, who had by his motion obtained certification by the Court of Civil Appeals of a question on which there was dissent, could not thereafter by application for writ of error take the case to the Supreme Court, even though the application sought revision of a ruling of the Court of Civil Appeals on which all the judges concurred and which could not be revised on the certificate of dissent. Chief Justice Stayton said in the opinion:

"* * * The law does not contemplate that this court shall hear and determine in piecemeal the many questions of law that may be decided or involved in a cause, and that on some a decision may be made on certificate of dissent, and after this on writ of error all other questions of law may be heard and

decided; but it does give to the litigant the right to use either remedy in a cause in which both are applicable, and he must determine for himself whether the question on which there is dissent is the only question vital to his right decided against him; and when he so determines, must be held to his election, and to have waived all questions other than such as he may have revised in the manner selected.

"The judgment of the Court of Civil Appeals was final in character; from it a writ of error might be granted on which all questions of law could have been revised; but applicant saw proper to pursue another remedy, more restricted in its operation, and he must be held thereby to have waived all right now to have writ of error, and to have waived all questions that could not be revised under the remedy selected.

"The laws look to the speedy termination of litigation, and do not permit delay that would necessarily result if, from a judgment final in character, two or more effective appellate proceedings, the one following the decision invoked in the other, might be used for the purpose of revising errors that could have been reached by a single remedy."

Even though the instant case was not certified following dissent in the Court of Civil Appeals, the reasons for the decision in the case cited have peculiar application, because the parties have deliberately elected to obtain by certification a decision by this Court of questions which they agree control the case.

The text of Texas Jurisprudence, under the title "Appeal and Error—Civil Cases," contains the following statement, citing in its support Campbell v. Wiggins, supra:

"* * * Where the Court of Civil Appeals on its own motion certifies a question, a litigant is not cut off from a right to prosecute a writ of error. But where a party by motion obtains a certification of certain questions he may not later obtain a writ of error to bring up other questions involved in the decision; by obtaining a certification he waives all questions other than such as he may have raised in the manner selected." (3 Texas Jurisprudence, 317.)

The general rule as to election of remedies, or methods of review, is thus stated, with citations of many authorities, in Corpus Juris:

"When a party has more than one remedy for review in a particular case, he must generally elect under which he will proceed, and, when he does elect a particular remedy, he waives all others, unless he is entitled to prosecute both remedies at the same time. * * *

480

"Where a party has brought a proceeding for appellate review and it has been prosecuted to a final determination by the appellate court, the general rule is that unless there have been new proceedings in the cause, he cannot again bring the same case up for review. Thus, as a general rule, where a party has appealed or sued out a writ of error, and the appeal or writ of error has been determined, he cannot afterward again take the case up for review by appeal or writ of error, or have a review or another pending appeal or writ of error. Nor can he bring up the same point which was decided or might have been decided on appeal, by a new appeal in the same cause, even by stipulation of the parties. * * * Upon the same principle, after a party has prosecuted to final judgment a complaint for review, he cannot afterward appeal from the original judgment. And it has been held that the final determination of an appellate proceeding will bar another proceeding in the same case, presenting the same questions for review, even though the proceedings are in different courts." (3 Corpus Juris, pp. 342-345.)

For the reasons stated and under the authorities cited, this case may not again be brought to this Court by writ of error. This being true, it will be the duty of the Court of Civil Appeals, when its judgment becomes final, to issue its mandate immediately and without permitting any period of time to elapse for the filing of an application for writ of error.

For the foregoing reasons the motion is overruled.