### KNOX et al. v. JOHNSON.
### No. 9030.

Court of Civil Appeals of Texas. Austin.

June 5, 1940.

Rehearing Denied June 12, 1940.

Gerald C. Mann, Atty. Gen., and Glenn R. Lewis, R. O. Fairchild, and Geo. W. Barcus, Asst. Attys. Gen., for appellants State Board of Control and another.

Claude A. Williams and John Vickers, both of Austin, for appellants Claude A. Williams and W. J. Lawson.

Dan Moody, of Austin, and Carl Wright Johnson and Wm. N. Hensley, both of San Antonio, for appellee.

BAUGH, Justice.

Appeal is from an order of the District Court of Travis County, granting a temporary injunction against the Texas State Board of Control restraining the members thereof from passing an order or resolution removing Dr. W. J. Johnson from the office of Superintendent of the San Antonio State Hospital, or in any manner interfering with his lawful discharge of his duties as such superintendent; from placing anyone else in said office; and from discharging any of the employees of said hospital except upon the recommendation of Dr. Johnson.

The agreed statement of the issue presented to the trial court herein was as follows: "The issue which the court has to try on this hearing is: If the Board of Control does not have the power, after notice to the regularly elected, qualified and

acting Superintendent of the San Antonio State Hospital and after a hearing and determination by the Board of Control that good cause exists for the removal of such Superintendent, to remove him, then in this hearing plaintiff is entitled to a temporary injunction; on the contrary, if the Board of Control has such power, then the plaintiff is not entitled to a temporary injunction."

The questions presented on this appeal are: First, whether Dr. Johnson, as superintendent of the San Antonio State Hospital, is an "officer of this State" within the meaning of Sec. 7 of Art. XV of the Constitution of Texas, Vernon's Ann.St.; and, secondly, whether under Arts. 691 and 3184, Vernon's Ann.Civ.Tex.Stats., the Board of Control has the power to remove him from office, upon its own determination of what constitutes "good cause" for such removal.

■ We think there can be little, if any, doubt that the superintendent of the San Antonio State Hospital is an officer of the State of Texas. Much has been written on whether the occupant of a public position is a public officer as contradistinguished from a public employee. The best and most comprehensive discussion of this subject that we have found is contained in State of Montana ex rel. Barney v. Hawkins, 79 Mont. 506, 257 P. 411, 53 A.L.R. 583–595, wherein decisions from many states are cited and reviewed. See, also, 34 Tex.Jur. § 2, p. 322; 46 C.J. § 2, p. 922; 22 R.C.L. § 2, p. 372. The rule deduced by the annotator in 53 A.L.R. 595, from numerous cases reviewed in determining the status of such a public position, is as follows: "It may be stated, as a general rule deducible from the cases discussing the question, that a position is a public office when it is created by law, with duties cast on the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent; while a public employment, on the other hand, is a position which lacks one or more of the foregoing elements."

An examination of the constitution and the statutes, in the light of the authorities, leads to the inescapable conclusion that Dr. Johnson, as such superintendent, is an officer of the State. Sec. 24 of Art. IV of the Constitution requires him to keep account of all moneys received and disbursed

by him and make semi-annual reports thereof under oath to the Governor. Art. 691, R.C.S., provides for the election of such superintendents, prescribes their qualifications, and fixes the "term of office" at two years. Art. 692 requires him to take the constitutional oath of office, and to make a bond to be approved by the Governor, "conditioned for the faithful performance of all the duties of said office," both to be filed with the Comptroller. Art. 695 denies to the Board of Control any power to fix, or to regulate such superintendent's salary; and the Board cannot authorize payment of accounts by voucher, until they have been certified by the superintendent as correct. Arts. 3175 to 3180 specifically set forth the powers and duties of such superintendent, wherein he is expressly and specifically treated and referred to as an officer of the State. Thus we have his position designated as an office. He is required to take the constitutional oath of office, and execute an official bond as is required of other state officers. He is made a custodian of and responsible for state property and state funds. His "term of office" and the salary therefor are fixed by law. Definite and specific governmental duties and powers are imposed upon him in which the State as a whole is interested. Manifestly, he discharges strictly a governmental function affecting the public as a whole, and clearly is an officer of the State.

Since the rights, duties and status of Dr. Johnson are determined by, and dependent upon, the Constitution and statutes of this State, decisions from other states predicated upon their own Constitutions and upon statutes different from ours are of little value on the questions here presented. Appellants, for example, cite Willis v. Scott, 146 Ky. 547, 142 S.W. 1012, wherein the Court of Appeals of Kentucky held that the superintendent of the Kentucky Asylum for the Insane was not an officer within the contemplation of the Constitution of that state. The opinion, however, does not indicate what provisions of the Constitution were involved, nor what were the provisions of the Kentucky Statutes then in force (1911) relating to the powers and duties of such superintendent. The Supreme Court of Arkansas, on the other hand, in Lucas v. Futrall, 84 Ark. 540, 106 S.W. 667, held that a superintendent of a similar eleemosynary institution was a state officer under the constitution and statutes

of that state. But, as above stated, the issues here presented depend upon a proper interpretation of our own Constitution and statutes, and the decisions from other states involving different constitutional and statutory provisions are of little value.

Nor is the holding of our Supreme Court in Betts v. Johnson, 96 Tex. 360, 73 S.W. 4, urged by appellants, applicable here. That case dealt only with the jurisdiction of the Supreme Court, subsequent to the Act of 1892, to issue writs of mandamus against a certain class of state officers. It in nowise restricted the phrase "all officers of this State" to mean heads of departments only.

█ The language and necessary implication of Sec. 7, art. XV of the Constitution itself negatives any such restriction of the term "all officers of this State." After providing in prior sections of Art. XV, and in Sec. 8 thereof, for the removal by impeachment or other prescribed modes, named officers of the Executive Department and Appellate and District Judges in the Judicial Department, the framers of the Constitution then provided in Sec. 7: "The Legislature shall provide by law for the trial and removal from office of all officers of this State, the modes for which have not been provided in this Constitution." This language necessarily comprehends, in addition to those otherwise specified in the Constitution itself, not only all officers of the State then provided for, but in addition those authorized by the Constitution to be thereafter created by the Legislature; and clearly included, as contemplated in Sec. 24 of Art. IV of the Constitution, relating to "all officers * * * of State institutions," superintendents of its eleemosynary institutions.

█ Thus Dr. Johnson was clearly an officer of the State within the purview of Sec. 7 of Art. XV. Consequently, the decision of the Supreme Court in Dorenfield v. State, 123 Tex. 467, 73 S.W.2d 83, 86, on which the trial court rested his decision, is controlling. We think the difference in the language employed in the act, "removal for cause," involved in the Dorenfield case; and that employed in Art. 691, R.S., "removal by the Board for good cause," and in Art. 3184, "may be removed by the State Board of Control for good cause," applying to appellee herein, in the light of holding in the Dorenfield case, is immaterial. As there stated, "a trial was an indispensable part of the constitutional mode for his removal as an officer of this state." And further that the term "trial" was used in the constitution in its ordinary accepted meaning in law as being "the judicial investigation and determination of the issues between parties." A judicial determination of an issue between parties is essentially a function inhering in, and devolved by the Constitution upon, the judicial department of the government as defined in that instrument. It involves a hearing of evidence according to rules of law, and the rendition of a judgment by some legally constituted judicial tribunal of competent jurisdiction.

█ Since the Constitution has prescribed a "trial" as a necessary prerequisite for the removal from office of "all officers of this State," neither the Legislature can authorize, nor the Board of Control effect, the removal of any such officer of the State except in compliance with its mandate. If it was the purpose of the Legislature in Arts. 691 and 3184 to authorize the Board of Control to remove a superintendent of a state hospital without a "trial" as used in Sec. 7, Art. XV of the Constitution, as that term was interpreted in the Dorenfield case, such attempt to do so was abortive and in contravention of the express language of the Constitution. But no such construction of these statutes is necessary. A construction which would render them valid is apparent. That is, that the Board of Control may remove, and if good and sufficient cause for removal exists, it becomes its duty to bring about the removal of a superintendent of such state hospital. But it must do so in conformity with the mode authorized by the Constitution. That is, by "trial" in a court of competent jurisdiction, and a judicial determination of whether good cause exists for such removal.

In no sense can the Board of Control be deemed a judicial or quasi judicial body. It is purely an administrative agency of the state government of legislative creation. It is not given by statute any power to summon witnesses, enforce their attendance, administer oaths, punish for contempt, hear evidence, or render judgments; such as is given by law to administrative agencies, as for example the Railroad Commission, to which are delegated quasijudicial functions and duties. It was, therefore, without power or authority to itself judicially determine whether Dr. Johnson should be removed from office.

We are not unmindful of the fact that this conclusion might seriously affect the Board's power of control over the State Hospitals and perhaps delay the removal of incompetent or otherwise unfit officers thereof. But the remedy for this must lie with the Legislature. Our duty in the matter is to interpret the law in the light of the Constitution and the decisions construing it.

We have read and considered the numerous cases cited by the several appellants, but have not undertaken to discuss, review, nor distinguish them.

The Texas cases cited and largely relied upon involve the removal of municipal officers, who, under the decisions, are not state officers within the purview of Sec. 7 of Art. XV of the Constitution. The cases from other jurisdictions involve either different provisions of the Constitution of such states; or different statutory provisions; or both. Consequently, in view of the conclusions above reached; the language of our own Constitution; and its interpretation by the Supreme Court in the Dorenfield case, no good purpose would be served by a consideration of them here.

Finding no error in the record presented, the judgment of the trial court is affirmed.

Affirmed.