

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 30, 1957

Honorable Jack Ross
Chairman
Board of Pardons and
  Paroles
Austin, Texas

Opinion No. WW-174

Re: Eligibility of a member of the 55th Legislature for appointment by the Board of Pardons and Paroles as Director of the Division of Parole Supervision under the provisions of Senate Bill 154, 55th Legislature, Regular Session, 1957, and related matters.

Dear Mr. Ross:

We have your letter asking the following questions with regard to the provisions of Senate Bill No. 154, Acts of the 55th Legislature, 1957.

"1.  In view of Article III, Section 18 of the Constitution of the State of Texas and assuming that an applicant who is now a member of the 55th Legislature shall resign that office, is he eligible for appointment by the Board of Pardons and Paroles as Director of the Division of Parole Supervision during the term of office to which he was elected a member of the 55th Legislature?

"2.  The Division of Parole Supervision is created for the discharge of the responsibility for the investigation and supervision of all prisoners released on parole.  The Director will be the executive officer of the Division. Article IV, Section 28, provides that no person may be employed as a parole officer or supervisor, or be responsible for investigations, surveillance, or supervision of persons on parole unless he meets certain qualifications set out in the Act.  Must the Director of the Division of Parole Supervision meet the qualifications set out in the second paragraph of Article IV, Section 28 of Senate Bill No. 154?"

Section 18, Article III of the Texas Constitution reads as follows:

"No Senator or Representative shall, during the term for which he may be elected, be eligible to any civil office of profit under this State, which shall have been created, or the emoluments of which may have been increased during such term; no member of either House shall, during the term for which he is elected, be eligible to any office or place, the appointment to which may be made, in whole or in part, by either branch of the Legislature; and no member of either House shall vote for any other member for any office whatever, which may be filled by a vote of the Legislature, except in such cases as are in this Constitution provided. Nor shall any member of the Legislature be interested, either directly or indirectly, in any contract with the State or any county thereof, authorized by any law passed during the term for which he shall have been elected."

In order to answer your first question it is necessary to determine (1) whether the Director of the Division of Parole Supervision is a civil office of profit, and if not (2) whether the employment of the Director is by virtue of a contract with the State as mentioned in the last sentence of the above quoted provision of the Constitution, Article III, Section 18.

We have reached the conclusion that the Director is not a civil office of profit for the reasons hereinafter set out.

It is well settled that the mere fact that a statute might mention a position as an office does not necessarily mean that it is in fact an office. There are many decisions as to what constitutes an office or officer as distinguished from an employee, such as Kimbrough v. Barnett, 93 Tex. 301, 55 S.W. 120 (1900) in which the Court said:

"The term 'office' is defined by Mr. Mechem, in his work on Public Officers (section 1), thus: 'Public office is the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law, or enduring at the pleasure of

the creating power, an individual is invested
with some portion of the sovereign functions
of the government, to be exercised by him for
the benefit of the public.'  The correctness
of this definition is nowhere questioned, so
far as we know, and it is useless to add sup-
porting authorities."

The latest decision we find by the Supreme Court
of Texas on the subject is Aldine Independent School
District v. Standley, 154 Tex. 547, 280 S.W. 2d 578
(1955).  In that case, the Court held that the assessor-
collector of taxes of an independent school district
is not a public officer, even though the statute (Arti-
cle 2791 V.A.C.S.) "created the office of assessor and
collector".  The collector was appointed by the Board
of Trustees for a period of one year beginning February
1, 1950, at a monthly salary, and he took the proper
oath of office and gave the bond required by the Board.
About two months later, the Board adopted a resolution
extending the contract one year from February 1, 1951.
On June 29, 1951, the Board adopted a resolution "firing"
the collector.  After exhausting his administrative
remedies, plaintiff (assessor and collector) filed suit
claiming that he is an officer under Article XVI, Sec-
tion 30 of the Constitution and that as such his term
of office is fixed at two years, and that the Board
had no power to discharge him except as provided by
Article V, Section 24 of the Constitution.  The Court
held that he was not an officer, and after reviewing
the statutes pertaining to school boards approved the
language in Dunbar v. Brazoria County, 224 S.W. 2d 739
(error refused) in which that Court had said:

> "'From the above authorities, it is
> apparent, we think, that the determining
> factor which distinguishes a public officer
> from an employee is whether any sovereign
> function of the government is conferred upon
> the individual to be exercised by him for
> the benefit of the public largely indepen-
> dent of the control of others.'"

Let us now examine and see what separate and
independent "sovereign functions of the government"
are conferred upon the Director "to be exercised by
him for the benefit of the public" and "largely
independent of the control of others".

When we examine the statute as a whole, we find that the sovereign functions of government contained in said Act are vested solely in the Board. Section 1 of the Act provides:

". . . It is also the intent of this Act to provide for the release of persons on parole and for the method thereof, to designate the Board of Pardons and Paroles as the responsible agency of state government to recommend determination of paroles and to further designate the Board of Pardons and Paroles as responsible for the investigation and supervision of persons released on parole."

We see, then, that at the very beginning of the Act it is shown that the Board is to be the responsible agency of the State government for carrying out the provisions of the Act pertaining to the parole of persons. This very sentence of the Act excludes the idea that the Director is vested with sovereign functions of government and on the contrary shows that he is to be an employee of the Board to assist it in carrying out its responsibility placed upon it by Section 1 of the Act. If the Director could exercise sovereign functions independent of the Board, then the provision of Section 1 placing responsibility on the Board would fail.

Section 2h of the Act defines "Director" as the Director of the Division of Parole Supervision, and the word "Director" is not mentioned again until Section 28.

Section 26 of the Act provides:

"Sec. 26. The Board of Pardons and Paroles shall have general responsibility for the investigation and supervision of all prisoners released on parole. For the discharge of this responsibility, there is hereby created with the Board of Pardons and Paroles a Division of Parole Supervision. Subject to the general direction of the Board of Pardons and Paroles, the Division of Parole Supervision including its field staff shall be responsible for obtaining and assembling any facts the Board of Pardons and Paroles may desire in considering parole eligibility, and for investigating and supervising paroled prisoners to see that the

> conditions of parole are complied with,
> and for making such periodic reports on
> the progress of parolees as the Board may
> desire."

We again see that the Board is to have the responsibility as to paroled prisoners, and the Division to be headed by the Director (Section 28), is to assist the Board. Notice that the statute says that the Division is created "with the Board". This section also says that subject to the general direction of the Board, the Division including its field staff shall do certain things, and make such periodic reports as the Board may desire. It is clear that the Board is not deprived of its sovereign governmental functions, and that the Division is merely to assist the Board in carrying out its responsibility placed upon it by the Act.

Section 28 of the Act provides:

> "Sec. 28. Salaries of all employees
> of the Division of Parole Supervision shall
> be governed by Appropriation Acts of the
> Legislature. The Board of Pardons and
> Paroles shall appoint a Director of the
> Division, and all other employees shall
> be selected by the Director, subject to
> such general policies and regulations as
> the Board may approve."

We see from the above the section itself mentions the Director as an "employee". We realize that this alone does not make him necessarily an "employee" rather than an officer, but it can be considered that the Legislature might have intended that he should be an employee rather than an officer. We say, then, that down through the above quoted part of Section 28 every sentence and word of the Act clearly indicates that the Division under the direction of the Director is not vested with sovereign functions of government independent of the Board and that every act of the Director is subject to the approval of the Board. The remaining portions of Section 28 apply only to the appointment of parole officers and gives the Director authority to prescribe additional qualifications to those stated "with the approval of the Board" which means that the Board, and not the Director, is vested with the sovereign functions of government.

Let us notice the remaining portions of the Act pertaining to the Director. It is true that Section 30 of the Act mentions the "terms of office" of the Director, but this fact does not show that he is vested with any sovereign power for the benefit of the public and "largely independent" of the control of the Board as stated in the Aldine case, supra. We have already seen that under well settled rules the mere fact that a statute m a y mention the position as an office does not necessarily mean that it is a public office.

It is also true that Section 30 of the Act provides for the approval by the Director of the members of the voluntary parole boards who are appointed by the Chairman. Even though the statute does not require the Board to approve the appointments, we cannot say that this is the exercise of a sovereign function of government, and even if it should be construed as the exercise of a sovereign function, such act and all others mentioned in Sections 30 and 31 would not be exercised "largely independent" of the Board.

We see, then, that when we examine the statute as a whole we find that it is clearly the intention to place the responsibility on the Board itself, and that none of the functions of the Director of the Division are sovereign functions or exercised "largely independent" of the Board.

Independently of any wording of the statute we call attention to the fact that the Act does not provide for any tenure of office for the Director. He is not required to take an oath. He is not required to give bond. These are usual requirements, though not necessary, of an officer. However, we believe that the fact that Section 28 calls him an "employee" and the fact that he does not take an oath and in performing practically every one of his duties, he is subject to the control of the Board, and since the Director has very little authority independent of the Board, we believe he is not an officer.

While the statute says nothing about the removal of the Director, we believe that in view of the fact that no term is set for the duration of his employment, he could be removed by the Board at any time. If he should be an officer, he cannot be removed except by

trial as provided by Article XV, Section 7 of the Constitution. See Knox v. Johnson, 141 S.W. 2d 698 (Tex. C.C.A. 1940, writ of error refused). We do not believe that it can be contended that the Board could not remove the Director at any time. If this is true, then he cannot be an officer.

In Attorney General's Opinion O-6458 (1945) it was held that the executive officer of the State Board of Vocational Education was not an officer, but was an employee and a member of the Legislature that had passed the Act creating the position was not disqualified from being appointed as such Director.

In Attorney General's Opinion V-308 (1947) it was held that the Executive Secretary of the Board of Regents for State Colleges was not an officer, but that he was an employee, and a member of the Legislature that created the position was not disqualified from holding it.

In Attorney General's Opinion WW-190 (1957) it was held that the position of Secretary-Director of the Teachers Retirement System is not an officer, but that he is an employee.

A reference to the history of the Act under consideration shows that Senate Bill 154 as originally introduced and reported favorably, provided an entirely different set-up from that contained in the Act that was finally passed and which became a law.

Section 1 of this original Bill contained a provision which is important in determining legislative intent. The Act as originally considered clearly did make the Director an officer rather than an employee. The fact that the Legislature rejected the following sentence in the original draft of Section 1 and in fact turned around and enacted the opposite is almost conclusive of the question. The rejected sentence reads as follows:

> "Recognizing that determining the proper qualifications for parole, and the conditions of parole, to be quasi-judicial considerations suitable to a State agency such as the Board of Pardons and Paroles, whereas the day-to-day supervision of parolees is a quite different kind of administrative responsibility, it is the further purpose of this Act to place

the determination of paroles in said Board, and the case-work supervision of parolees in a separate division of the Executive Department under the general supervision of the Governor."

The original Bill in Section 26 again provided that the Governor shall have general responsibility for the investigation and supervision of all parolees, and also created a Division with the Executive Department known as Division of Parole Supervision, and further provided that subject to the general direction of the Governor this Division and its staff shall be responsible for the supervision of parolees.

Section 28 of the original Bill provided that the Governor shall appoint the Director, and that other employees selected shall be subject to the general policies and regulations of the Governor, and provided that the Governor should approve any additional qualifications of employees the Director might make.

We see, then, that under the original Bill as introduced it was provided that the Board was to be a quasi-judicial body rather than an administrative body. However, the Bill as passed as seen from Section 1 above quoted makes the Board an administrative body and rejects all idea of having the Board to be only a quasi-judicial body and the new Division in the Executive Department to be the administrative body. We see, as shown by Section 1 of the final Act, the entire responsibility was placed on the Board for administration which was divided under the original Act. If this responsibility is to be placed on the Board, then if the Director should have separate sovereign functions of government the Board certainly could not carry out its administrative responsibility.

In view of what we have said, it is our opinion that the Director is not an officer, and, therefore, a member of the 55th Legislature which enacted Senate Bill 154, if he resigns as a member of the Legislature, will not be disqualified under the first sentence of Article III, Section 18 of the Constitution from being appointed Director.

The other matter to determine in answering the first question is whether a contract of employment is a "contract with the State" as provided in the second and last sentence of Section 18, Article III

of the Constitution.

We are of the opinion that said sentence is
not intended to cover such contracts. The first clause
of the first sentence of this provision of the Consti-
tution mentions only "a civil office of profit", and
does not mention anything about an "employee" as
distinguished from an "officer," and, therefore, under
said first clause an employee would not be disqualified.

The second clause of the first sentence reads
as follows:

> ". . . no member of either House shall,
> during the term for which he is elected,
> be eligible to any office or place, the
> appointment to which may be made, in whole
> or in part, by either branch of the Legis-
> lature; . . ."

It is to be noticed that the second clause above
quoted not only includes the word "office" but also
includes the word "place" which we construe to mean any
position of employment other than an office. This
clause does not disqualify a member of the Legislature
from accepting a "place" of employment which was created
by the Legislature of which he was a member. It
merely provides that the Legislator is not eligible
during the term for which he was elected to such office
or place when the appointment may be made in whole or
in part by either branch of the Legislature. It
appears, then, that the Constitution intended to cover
the field of holding office and employment in the
first two clauses of the section of the Constitution.
Why did the Legislature in the first clause intend to
disqualify members only from holding office if it
was also intended to disqualify them from holding a
position of employment. It would have been just as
easy to add the word "place" after the word "office"
in the first clause as it was to add that word in the
second clause. The fact that the first clause dis-
qualifies legislators only from an office and the
second clause disqualifies them not only from an
office, but from "employment" only when the appoint-
ment is made by the Legislature, shows that it was
not intended to disqualify an "employee" where he
is to be appointed by someone other than the Legis-
lature. In other words, we believe that the first
two clauses of Article III, Section 18 are the sole

provisions of the Constitution which were intended to disqualify members of the Legislature from accepting an office or position of employment, and that the last sentence of said provision, therefore, was intended to cover a new field, or a contract of a different nature, from that provided in the first two clauses.

The last sentence of said Article III, Section 18 reads as follows:

> ". . . Nor shall any member of the Legis-
> lature be interested, either directly or
> indirectly, in any contract with the State,
> or any county thereof, authorized by any
> law passed during the term for which he
> shall have been elected."

We believe that this sentence is not to be construed as applying to a contract of employment, but was intended to cover only what we would customarily call a contract to sell something or to perform some service other than as a regular employee of the State or county. As stated above, we believe that the Constitution disposed of both officers and employees in the first two clauses of the first sentence, and, therefore, officers and contracts of employment are excluded from the last sentence.

Under the last sentence, a Legislator is forever barred from entering into a contract with either the State or county if it was authorized by the Legislature of which he was a member regardless of the number of years that might have intervened. See Lillard v. Freestone County, 57 S.W. 338 (Tex. C.C.A. 1900). In that case, the contract was to publish a delinquent tax list of the county made with the man who was a member of the Legislature when the contract was authorized but whose term had expired, and the contract was held to be void.

Under the first clause of the constitutional provision in question a member of the Legislature may vote to create an office, either State or county, and he will be eligible to hold that office after his term as a member of the Legislature expires. We say this for the reason that the Courts have held that an officer does not hold office by virtue of a contract, but merely holds it by virtue of law. See 34 Tex. Jur. p. 324 Section 3.

If we are going to say that the word "contract" in the last sentence includes a contract of employment then we will have to say that a member of the Legislature may vote to create an office and will be eligible for it after his term expires, but if he votes to create a minor position of employment in some department of the State or with a county, he is forever barred from holding such minor position of employment. We do not believe that the Constitution ever intended such situation, and, therefore, we believe that the word "contract" does not include a contract of employment.

It is, therefore, our view that a member of the 55th Legislature that enacted Senate Bill 154 is not disqualified by the last sentence of Article III, Section 18 of the Constitution from accepting the place of Director.

The answer to your second question involves a construction of a part of Section 28 of the Act reading as follows:

> "It is expressly provided, however, that no person may be employed as a parole officer or supervisor, or be responsible for the investigations, surveillance, or supervision of persons on parole, unless he meets the following qualifications together with any other qualifications that may be specified by the Director of the Division, with the approval of the Board of Pardons and Paroles: 26 to 55 years of age, with four years of successfully completed education in an accredited college or university, and two years of full time paid employment in responsible correctional work with adults or juveniles, social welfare work, teaching, or personnel work."

If it had been intended that the Director should have the same qualifications as the parole officers and supervisors, it would have been an easy matter to add the word "Director". Under the well known rule of ejusdem generis only such persons who are to perform the duties of parole officers and supervisors are included. It is true that the Director is the head of the Division and assists the Board in the performance of its duties, but the duties of the Director do not require him to do field work such as is required of the parole officers who will report to

the Director.  They are the employees who will come in contact with the parolees and the Legislature no doubt thought that only a man of good education and young and alert not to exceed 55 years of age should do this work.

Since only one person is to be appointed Director, the Board can screen all applicants for such position and decide whether a person 56 years of age is too old and also decide whether he possess the qualifications the Board believes are necessary to carry on the work of Director.

In view of the above, it is our opinion that the Director need not necessarily possess the qualifications set out in Section 28 for parole officers and supervisors, but that the Board is the sole judge of the qualifications.

## SUMMARY

A member of the 55th Legislature that enacted Senate Bill 154 is not disqualified as being appointed Director of the Division of Parole Supervision by virtue of the provisions of Article III, Section 18 of the Constitution of Texas.

The Director to be appointed by the Board of Pardons and Paroles need not possess the qualifications required of parole officers of supervisors.

Very truly yours,

WILL WILSON
Attorney General of Texas

By H. Grady Chandler
Assistant

APPROVED:

OPINION COMMITTEE:
Larry Jones, Chairman
Milton Richardson
Joe G. Rollins

HGC:jas