

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

December 14, 2007

The Honorable James L. Keffer
Chair, Committee on Ways and Means
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

The Honorable Byron Cook
Chair, Committee on Civil Practices
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0584

Re: Nature of the offices of President Pro Tempore of the Texas Senate and Speaker of the Texas House of Representatives for purposes of removal from office (RQ-0589-GA)

Dear Representative Keffer and Representative Cook:

You ask four questions[1] about the nature of the offices of the President Pro Tempore of the Texas Senate and the Speaker of the Texas House of Representatives:

> Question 1: Are the Speaker of the Texas House of Representatives and the President Pro Tempore of the Texas Senate "legislative officers" as recently held by the Texas Supreme Court, officers who serve at the pleasure of the membership, according to rules adopted under the authority granted by Article 3, [section ]11 of the Texas Constitution, or are they "state officers" subject to removal only as provided in Article 15, Section 7 of the Texas Constitution?

> Question 2: If you conclude that . . . the Speaker of the Texas House of Representatives and the President Pro Tempore of the Texas Senate are subject to removal only by impeachment or other trial and removal proceeding under Article 15, Section 7 of

---

[1]*See* Letter and Brief from Honorable James L. Keffer, Chair, Committee on Ways and Means, Texas House of Representatives, joined by Honorable Byron Cook, Chair, Committee on Civil Practices, Texas House of Representatives, to Honorable Greg Abbott, Attorney General of Texas (June 18, 2007) (*available at* http://www.oag.state.tx.us) [hereinafter Request Letter and Request Brief, respectively]. All letters and briefs received by the Office of the Attorney General and cited herein are on file with the Opinion Committee.

the Texas Constitution, what is the effect of the impeachment of either of these officers? That is, does impeachment only remove them from the legislative office of Speaker or President Pro Tempore, or does it expel them from membership in the House/Senate in a manner different from, and inconsistent with, Article 3, Section 11 of the Texas Constitution?

Question 3:   If, after the regular legislative session has commenced, a Speaker chosen by the members of the House is removed from that office by any legal means, does the House then have the power to select a new Speaker, or is it required to continue its operations in the absence of a Speaker, in apparent conflict with Article 3, Section 9 of the Texas Constitution?

Question 4:   If the rules adopted by the Texas House of Representatives give the Speaker of the House unlimited discretion to refuse to recognize members for purposes of presenting any motion whatsoever—be it a motion to impeach the Speaker, a motion to vacate the chair, or any other sort of motion—do those rules effectively give the Speaker unlimited ability to prevent his removal (by simply refusing to recognize members for the required motions)?

Request Brief at 1.

I.     **Are the President Pro Tempore of the Texas Senate and the Speaker of the Texas House of Representatives Officers of the State Such That They May be Removed Only Pursuant to Article XV, Section 7 of the Texas Constitution?**

To determine whether the Speaker of the Texas House of Representatives (the "Speaker") and President Pro Tempore of the Texas Senate (the "President Pro Tempore")[2] may be removed *only* as provided in article XV, section 7 of the Texas Constitution, we must first analyze whether they are "officers of this State" under that constitutional provision.

    A.   **Are the President Pro Tempore and the Speaker officers of this State under article XV, section 7 of the Texas Constitution?**

The President Pro Tempore and the Speaker are not included in the list of "certain" officers who are expressly subject to impeachment under article XV, section 2 of the Texas Constitution.

---

[2]We capitalize "Speaker" and "President Pro Tempore" throughout this opinion because those terms are capitalized in the Texas Constitution. *See* TEX. CONST. art. III, § 9. The only exception should be when those words appear in a quotation without capitalization.

TEX. CONST. art. XV, § 2 (entitled "Trial of Impeachment of Certain Officers by Senate"); *see also* Request Brief at 3. Article XV, section 2 lists "the Governor, Lieutenant Governor, Attorney General, Commissioner of the General Land Office, Comptroller, and the Judges of the Supreme Court, Court of Appeals and District Court" as subject to impeachment under that constitutional provision. TEX. CONST. art. XV, § 2. Because neither the President Pro Tempore nor the Speaker appears on that list, neither is subject to impeachment under article XV, section 2. *See id.*; *see also* Tex. Att'y Gen. Op. No. JC-0418 (2001) at 5–6 n.1 (stating that a member of the Railroad Commission is not subject to impeachment under article XV, section 2); Tex. Att'y Gen. Op. No. O-898 (1939) at 3 (observing that only those officers named in article XV, section 2 are subject to impeachment under that provision).

We look then to article XV, section 7, entitled "Removal of Officers When Mode not Provided in Constitution." TEX. CONST. art. XV, § 7. This provision requires the Legislature to provide by law "for the *trial and removal* from office of *all officers of this State*, the modes for which have not been provided in this Constitution." *Id.* (emphasis added).

Pursuant to section 7, the Legislature enacted Government Code chapter 665 to provide for the impeachment of individuals not listed in article XV, section 2:[3]

> An individual may be removed from an office or a position by impeachment in the manner provided by the constitution and this chapter if the individual is:
>
> (1)  *a state officer*;
>
> (2)  a head of a state department or state institution; or
>
> (3)  a member, regent, trustee, or commissioner having control or management of a state institution or enterprise.

TEX. GOV'T CODE ANN. § 665.002 (Vernon 2004) (emphasis added). Section 665.002(1) merely refers to "a state officer"; it does not list specific officers by title, nor does it elaborate on the type of officer to which it refers.

---

[3]Representative Pitts contends that only officers listed in article XV, section 2 are subject to impeachment, citing Attorney General Opinion O-898. *See* Brief of Honorable Jim Pitts, Vice Chair, Committee on Government Reform, Texas House of Representatives, at 4–5 (Aug. 3, 2007). This position, however, is not consistent with *Knox v. Johnson*, in which the court considered article XV, section 7. *See Knox v. Johnson*, 141 S.W.2d 698 (Tex. Civ. App.—Austin 1940, writ ref'd). *Knox* concluded that the "language necessarily comprehends, in addition to those otherwise specified in the Constitution itself, not only all officers of the State then provided for, but in addition those authorized by the Constitution to be thereafter created by the Legislature." *Id.* at 701; *see also* Tex. Att'y Gen. Op. O-898 (1939) at 3. Attorney General Opinion O-898 evaluates impeachment generally and does not focus on the scope of article XV, section 7. *See generally* Tex. Att'y Gen. Op. No. O-898 (1939). Moreover, neither article XV, section 7 nor Attorney General Opinion No. O-898 establish that the phrase "officers of this State" as used in section 7 is limited to the officers specifically mentioned in section 2. In fact, because the modes of impeachment for the officers listed in section 2 are described in the constitution itself, the language and substance of section 7 would be unnecessary and superfluous if it were limited to the officers listed in section 2.

### 1.     Summary of arguments presented.

The Speaker contends that he is an officer of the state for purposes of article XV, section 7 and Government Code chapter 665.[4] He first suggests that "[t]he predominant determining factor distinguishing those officials who are public officers from those who are not is 'whether any sovereign function of the government is conferred upon the individual to be exercised by him for the benefit of the public largely independent of the control of others.'" Speaker's Brief at 10 (quoting *Aldine Indep. Sch. Dist. v. Standley*, 280 S.W.2d 578, 583 (Tex. 1955)). Relying on this standard, he particularly points to "numerous . . . functions" bestowed upon the Speaker by the Texas Constitution and statutes, "any of which clearly constitutes part of the sovereign functions of the state." *Id.* at 11. Further, the Speaker urges, he holds a two-year term of office under article III, section 9(b) of the Texas Constitution and takes the "constitutional oath of office" for Speaker, both of which he says indicate he is a state officer. *Id.* at 13–20. Finally, the Speaker relies on *In re Texas Senate*, a 2000 Supreme Court of Texas opinion, for the proposition that the Speaker can be both a legislative officer and a state officer. *Id.* at 20; *see In re Tex. Senate*, 36 S.W.3d 119 (Tex. 2000).

Your brief, as well as others submitted to this office, contend that the Speaker is not an officer of the state for purposes of article XV, section 7 and chapter 665 of the Government Code. These briefs suggest that *In re Texas Senate* and *Diffie v. Cowan*, a 1932 Texarkana Court of Civil Appeals opinion, stand for the proposition that the President Pro Tempore and Speaker are legislative officers, not state officers. *See* Request Brief at 2–3 (text accompanying notes 5, 12, and 13).[5] One brief contends that legislators are not subject to impeachment generally.[6] Another suggests that the President Pro Tempore and Speaker are legislative officers, not state officers, because "neither position is directly elected by the electorate, nor appointed by the Governor."[7] And another suggests that none of the Speaker's duties are "'sovereign duties' that would make him a state officer under" article XV, section 7.[8] Finally, another contends that the Speaker does not serve a term fixed by law.[9]

We will address these and other arguments as we analyze the relevant issues.

---

[4]*See* Brief of Honorable Tom Craddick, Speaker of the Texas House of Representatives, at 9–12 (rec'd July 20, 2007) [hereinafter Speaker's Brief].

[5]*See also* Brief from Honorable Charlie Geren et al., Vice Chair, Committee on Licensing and Administrative Procedures, Texas House of Representatives, at 2–3 (Aug. 3, 2007) [hereinafter Geren et al. Brief].

[6]*See* Geren et al. Brief at 3.

[7]Brief from Mario X. Perez, State Chair, Common Cause of Texas, at 1 (July 31, 2007) [hereinafter Perez Brief].

[8]Brief from Rayford Price, Rayford Price & Assocs., at 2 (Aug. 11, 2007) [hereinafter Price Supplemental Brief].

[9]*See* Geren et al. Brief at 16.

## 2.     Summary of law.

Neither article XV nor chapter 665 defines "officers of this state" or "state officer(s)."[10] *See* TEX. CONST. art. XV, § 7; TEX. GOV'T CODE ANN. §§ 665.001–.028 (Vernon 2004) (chapter 665, subchapters A–B).[11] The constitution is to be construed according to the plain meaning of its words. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003) (stating that courts look to the plain and common meaning of statute's words); *see also Booth v. Strippleman*, 61 Tex. 378, 378–79 (Tex. 1884); Tex. Att'y Gen. Op. No. GA-0293 (2005) at 2 (stating that the construction of constitutional provisions is generally governed by the same rules governing the interpretation of statutes and codes). The meaning of the phrase "officers of this state" is ambiguous, however, because on its face the phrase does not provide a plain-meaning definition, and it is not defined in the constitution, relevant state statutes, or court decisions. And, as indicated by the many briefs we received in this matter, the phrase appears to be subject to more than one reasonable interpretation. *Cf. Red v. Bounds*, 63 S.W.2d 544, 546 (Tex. 1933) (stating that if a statute is susceptible to more than one meaning, it should be given the construction that will best effect its purpose rather than a construction that will permit its terms to be easily evaded). Moreover, analyzing a similar phrase, the Texas Supreme Court opined that "[t]he words 'officers of the state government' are . . . very indefinite." *Betts v. Johnson*, 73 S.W. 4, 4 (Tex. 1903). On its face, the phrase "officers of this state" could refer to a statewide-elected official, an appointee to a state commission or agency, an officer of a local government body in this state, or other kinds of officers. Accordingly, we rely on established standards to construe the relevant constitutional and statutory phrases, including legislative history. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005) (stating that courts may look to legislative history to determine the meaning of a statutory or constitutional provision).

The history of article XV, section 7 provides no insight into the meaning of the phrase "all officers of the state." *See* TEX. CONST. of 1876 art. XV, § 7; JOURNAL OF THE TEXAS CONSTITUTIONAL CONVENTION OF 1875, at 312–13, 770–71 (Oct. 8 & Nov. 22, 1875); DEBATES IN THE TEXAS CONSTITUTIONAL CONVENTION OF 1875, at 190–201, 445–51 (Seth Shepard McKay, Ph. D., Univ. of Texas Press 1930 (Oct. 8 & Nov. 22, 1875); *cf.* TEX. CONST. of 1845 art. IX, § 6 (using language similar to that adopted in article XV, section 7 of the 1876 constitution); JOURNAL OF THE

---

[10]We use the terms "officer(s) of this State," "officer(s) of the State," and "state officer(s)" interchangeably except where the context clearly refers to one or the other.

[11]A state officer appears to be a kind of public officer. There are other kinds of public officers, such as county officers and city officers. *See, e.g., Travis County v. Jourdan*, 42 S.W. 543, 543 (Tex. 1897) (distinguishing county officers from state officers); *Goodwin v. Harrison*, 66 S.W. 308, 308 (Tex. Civ. App.—Fort Worth 1902, no writ) (referring to a "public officer of the county"); *see also, e.g., Willis v. Potts*, 377 S.W.2d 622, 629 (Tex. 1964) (concluding that a city councilman is a municipal officer unless he is enforcing the general criminal laws of the state, at which time he acts as a state officer); *City of Wichita Falls v. Lewis*, 68 S.W.2d 388, 389 (Tex. Civ. App.—Fort Worth 1933, writ dism'd) (referring to a "public officer of the city"); *cf. Aldine Indep. Sch. Dist. v. Standley*, 280 S.W.2d 578, 585 (Tex. 1955) (referring to a "public officer of this state"). Two cases, *Knox v. Johnson* and *Dorenfield v. State ex rel. Allred*, do not distinguish a "public officer" from a "state officer" and use authorities discussing "public officers" in their analyses of who is and who is not a "state officer." *See Knox*, 141 S.W.2d at 700; *Dorenfield v. State ex rel. Allred*, 73 S.W.2d 83, 86–87 (Tex. 1934). Presumably, that is because a state officer is a public officer. As noted, however, not all public officers are state officers; some public officers are city or county officers.

TEXAS CONSTITUTIONAL CONVENTION OF 1845, at 108, 114–15, 186, 193 (July 28, & Aug. 8, 1845); DEBATES IN THE TEXAS CONSTITUTIONAL CONVENTION OF 1845, at 264–81, 465–82 (July 28 & Aug. 8, 1845).

Reviewing the statutory impeachment provision's legislative history, on the other hand, provides some insight into the breadth of the term "state officer" as used therein. Found today in Government Code chapter 665, this provision is traceable to the 1876 Constitution. *Compare* Act of Aug. 21, 1876, 15th Leg., R.S., ch. 133, § 26, 1876 Tex. Gen. Laws, *reprinted in 8 H.P.N. Gammel, The Laws of Texas 1822–1897*, at 219, 226 (listing as officers who were removable by impeachment the commissioner of agriculture and the commissioner of insurance and banking, but not elaborating on the meaning of "state officer"), *with* Act of Sept. 28, 1917, 35th Leg., 3d C.S., ch. 34, § 1, 1917 Tex. Gen. Laws 102, 103 (House Bill 44) (amending the impeachment statute to provide for removal of the commissioners of agriculture and insurance and banking as well as "all other state officers and heads of state departments or institutions of any kind, and all members, regents, trustees, commissioners having the control or management of any State institution or enterprise") *and* Letter from Honorable Bruce Bryant to Honorable F.O. Fuller, Speaker, House of Representatives (Sept. 21, 1917) (stating that the purpose of House Bill 44 was to define "what officers, agents, and employees of the State Government may be impeached by the House of Representatives . . . [a]s there are no statutory provisions at this time . . . defining specifically who may be impeached . . . .") (House Bill 44 on file with the Library and Archives Commission). Revisions to the Act in 1981, before codification in 1993, provided for the impeachment of:

> The Governor, Lieutenant Governor, Secretary of State, Attorney General, State Treasurer, Commissioner of the General Land Office, Comptroller, Commissioner of Insurance, Banking Commissioner, Justices of the Supreme Court, Judges of the Court of Criminal Appeals, Justices of the Courts of Appeals, Judges of the district courts, Judges of the criminal district courts, and *all other State officers* and heads of State departments or institutions of any kind, and all members, regents, trustees, commissioners having control or management of any State institution or enterprise, shall be removed from office or position by impeachment . . . .

*See* Act of June 1, 1981, 67th Leg., R.S., ch. 291, § 68, 1981 Tex. Gen. Laws 761, 792 (emphasis added). In addition to specifically listing certain state officers such as the Governor and the Lieutenant Governor as subject to impeachment, the 1981 provision expressly added the broad category of "all *other* state officers." *Id.* (emphasis added). By using the phrase "all other state officers" in contrast to the state officers expressly listed, the Legislature made it clear that officers other than those expressly listed in article XV, section 2 and this statute, are subject to impeachment. The broad phrase "state officers" was then carried over into the current statute following its non-substantive recodification in 1993. *See* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, sec. 665.002, 1993 Tex. Gen. Laws 583, 726–27 (codified at TEX. GOV'T CODE ANN. § 665.002(1)) (stating that chapter 665's provisions apply to any "state officer"). Thus, while the history of this statute does not clarify whether the Speaker and President Pro Tempore are "state officers" under

chapter 665, it clearly shows that the term is broader than the list of state officers subject to impeachment under article XV, section 2.

When it enacted chapter 665, the Legislature could have expressly included or excluded the Speaker as a "state officer" subject to impeachment. Alternatively, the Legislature could have clearly defined what constitutes a "state officer." Because the Legislature did neither, the definition of the term is left to the courts.

To date, the courts have not clearly defined what is meant by "state officer" for the purpose of impeachment. Nor has any court considered the possible impeachment of officials with the Speaker and the President Pro Tempore's unique roles and duties. Because the existing legal guidance on this issue is limited, our advice is similarly constrained to the limited legal framework available to us.[12]

Indeed, the Texas Supreme Court has acknowledged that it is difficult to determine whether a person is an officer of the state. *See Betts v. Johnson*, 73 S.W. 4, 4 (Tex. 1903). This task is particularly difficult given the court's determination that a person may be such an officer for some purposes but not for others. *See id.*

That said, the Texas Supreme Court has at least discussed concepts to be considered when evaluating whether a person is a state officer for purposes of removal from office under article XV, section 7 or chapter 665. *See Dorenfield v. State ex rel. Allred*, 73 S.W.2d 83, 85 (Tex. 1934); *see also Knox v. Johnson*, 141 S.W.2d 698, 700–01 (Tex. Civ. App.—Austin 1940, writ ref'd). By adding the notation "writ refused," the Texas Supreme Court "adopted the court of civil appeals' judgment *and reasoning* as its own." *Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 193 (Tex. 2004) (Jefferson, J., concurring) (emphasis added) (citing *Tex. Utils. Elec. Co. v. Timmons*, 947 S.W.2d 191, 199 (Tex. 1977)). In effect, the court of appeals opinion became the opinion of the Supreme Court of Texas.

In *Dorenfield*, the Texas Supreme Court examined whether certain Texas Relief Commission members were "officers of this State" for purposes of removal from office under article XV, section 7 of the constitution. *Dorenfield*, 73 S.W.2d at 84–86. This Depression-era agency was overseen by a nine-member commission, of which three members were appointed by the Speaker. *Id.* at 85. The court recited such facts as: the appointments were for a "term fixed by law," the commission members took a constitutional oath of office, and members appointed by the Speaker and Lieutenant Governor could be removed only for cause. *Id.* Without further explanation, the court held that the Speaker's appointees were state officers who, absent death or resignation, served until "removed after trial under the provisions of some valid law." *Id.* at 86 (citing TEX. CONST. art. XV, § 7).

Six years later, in *Knox v. Johnson*, the Austin Court of Appeals held that a superintendent of a state hospital was an "officer of the State within the purview of [section] 7 of [article] XV."

---

[12]In the opinion process, we cannot "disregard the plain language of the statute" nor can we "ignore or overrule judicial decisions." Tex. Att'y Gen. Op. No. GA-0563 (2007) at 5–6.

*Knox*, 141 S.W.2d at 701. The *Knox* court began by discussing whether a public position is a public office:

> a position is a public office when it is created by law, with duties cast on the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent.

*Id.* at 700 (citations omitted). The court then described facts about the superintendent's position, including: his appointment for a statutorily fixed, two-year term; taking a constitutional oath; executing a bond "as . . . required of other state officers"; providing semi-annual reports to the Governor regarding "all moneys received and disbursed by him"; and serving as "custodian of and responsible for state property and state funds." *Id.* The court summarized the superintendent's office as follows:

> Thus, we have his position designated as an office [created by law]. He is required to take the constitutional oath of office, and execute an official bond as is required of other state officers. He is made a custodian of and responsible for state property and state funds. His "term of office" and the salary therefor are fixed by law. Definite and specific governmental duties and powers are imposed upon him in which the State as a whole is interested. Manifestly, he discharges strictly a governmental function affecting the public as a whole, and clearly is an officer of the State.

*Id.*

Though *Dorenfield* and *Knox* provide guidance for our analysis, neither explains to what degree any particular part of an officeholder's duties, responsibilities, or facts weighed in the courts' conclusions. Nor do they explain whether the omission of any particular duty, responsibility, or fact would be significant, or whether any one such criterion, alone, could be sufficient to establish state-officer status in a particular case. The courts provide no insight into the relative significance of any particular fact, such as posting a bond versus performing a sovereign function, or whether additional duties or responsibilities are relevant in the state-officer analysis. These opinions thus provide little guidance in how to apply their particular facts, or additional or different facts, in a different context.

Providing additional guidance, though not in the context of removal from office, the El Paso Court of Civil Appeals stated in 1940 that the Speaker is both an officer of the state *and* an officer of the Legislature. *See Miller v. El Paso County*, 146 S.W.2d 1027, 1034 (Tex. Civ. App.—El Paso 1940), *rev'd on other grounds*, 150 S.W.2d 1000 (Tex. 1941). *Miller* considered whether the Legislature violated the constitutional separation-of-powers principle by delegating to a local chamber of commerce the authority to appoint members to a Board of County Development. *See id.* at 1034. In analyzing the question, the *Miller* court found that *Dorenfield*, though not conclusive, had "considerable bearing." *Miller*, 146 S.W.2d at 1034. The *Miller* court stated:

> It is true that the Speaker of the House is an officer of the State; in
> respect to the functioning of the legislative branch of the government,
> an executive officer. However, he is in all respects an officer of the
> legislative branch of the government, and his power and function is
> as such.

*Id.* Even though the court described the Speaker as an "officer of the State," such description has no significance here because the court was not evaluating article XV, section 7, chapter 665, or the application of either provision to the issue of whether the Speaker or President Pro Tempore are subject to impeachment. As a result, the comment is out of context for our purposes.

In 2000, the Texas Supreme Court considered whether legislative officers and state officers are mutually exclusive categories, albeit in a different context. The court concluded that an officer may be both. *In re Tex. Senate*, 36 S.W.3d 119, 120 (Tex. 2000). Initially, the court noted, the Lieutenant Governor is listed in article IV of the Texas Constitution as a member of the Executive Department. *See In re Tex. Senate*, 36 S.W.3d at 120; TEX. CONST. art. IV, § 16. Thus, the Lieutenant Governor functions in part as a state official in the Executive Department. *In re Tex. Senate*, 36 S.W.3d at 120. But the court further pointed out that the Lieutenant Governor is named by the constitution as "President of the Senate," making him an officer of the Senate. *Id.* at 120–21; TEX. CONST. art. IV, § 16(b). The court noted that "[a]lthough section 16 also gives the Lieutenant Governor powers and authority of Governor in specified circumstances, these do not detract from the express reference to the Lieutenant Governor as a Senate officer." *In re Tex. Senate*, 36 S.W.3d at 120.

We also note that the Texarkana Court of Appeals has opined—in dicta and in a case not reviewed by the Supreme Court—that the Speaker is not a state officer and that "the members of the state Legislatures are not 'officers of the state,' subject to impeachment, and this will hold true even though the State Constitution may fail to expressly give the legislative body control over its own members." *Diffie v. Cowan*, 56 S.W.2d 1097, 1101 (Tex. Civ. App.—Texarkana 1932, no writ) (Blalock, C.J., dictum) (citing *In re Speakership*, 25 P. 707, 709 (Colo. 1891)).[13] However, the state-officer question was not at issue in that case. Thus, the court's comment about officers of the state was mere dicta, defined as "observation[s] or remark[s] made concerning some rule, principle, or application of law suggested in a particular case, which observation[s] or remark[s] [are] not necessary to the determination of the case." *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos.*, 217 S.W.3d 653, 662 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). "Under the principle of *stare decisis*, dictum is not binding as a precedent." *In re Certain Underwriters at Lloyd's*, 18 S.W.3d 867, 870 (Tex. App.—Beaumont 2000, no pet.).

In sum, the constitutional and statutory provisions at issue do not expressly define "officer of this State" for purposes of impeachment under article XV, section 7 of the Texas Constitution,

---

[13]Although the Geren et al. Brief relies on this dicta for the proposition that the Speaker is not a state officer subject to impeachment, that brief does not similarly rely on that dicta for the proposition that "the State Constitution may fail to give the legislative body control over its own members." *Diffie v. Cowan*, 56 S.W.2d at 1101; Geren et al. Brief at 2–3. Clearly, there are reasons to question the analytical validity of this dicta.

or under chapter 665 of the Government Code. *See* TEX. CONST. art. XV, § 7; TEX. GOV'T CODE ANN. § 665.002(1) (Vernon 2004). Moreover, no Texas case specifically answers whether the Speaker and the President Pro Tempore are officers of the state for purposes of impeachment. The cases addressing whether a particular officer is a state officer for removal purposes under article XV, section 7 do not provide analysis regarding whether the facts considered in those cases are exclusive or how to apply such facts or concepts in other situations such as this question.

### 3. Application of law.

In searching for guidance, we find that *Dorenfield* and *Knox* provide the best available framework for analyzing this part of your first question because the former is Texas Supreme Court authority addressing whether an officer is an officer of the state for purposes of impeachment under article XV, section 7, and the latter addresses the same question and is the precedential equivalent of a Texas Supreme Court opinion. *Dorenfield*, 73 S.W.2d at 83; *Knox*, 141 S.W.2d at 700; *see also Hubenak*, 141 S.W.3d at 193 (citations omitted) (Jefferson, J., concurring) (clarifying that when the Texas Supreme Court disposes of a case with the notation "writ ref'd," the court adopts as its own the reasoning and judgment of the court of appeals). Thus, *Dorenfield* and *Knox* have equal precedential weight. *Dorenfield* provides a helpful but general discussion of the characteristics of a state officer for purposes of article XV, section 7. *Knox* is more expansive than *Dorenfield*, providing more details for analyzing whether a state official is an officer of this state for that purpose. Therefore, we consider, as did *Knox*, whether the office of the Speaker was "created by law," whether the official took a "constitutional oath of office," and whether he "executed an official bond." *Knox*, 141 S.W.3d at 700. Additionally, we look at whether the official is "responsible for state property and state funds" and whether his "'term of office' and salary . . . are fixed by law." *Id.* We also determine whether "[d]efinite and specific governmental duties and powers are imposed upon [the official] in which the State as a whole is interested" and the officer "[m]anifestly . . . discharges strictly a governmental function affecting the public as a whole." *Id.*

#### a. Are the offices of the President Pro Tempore and the Speaker created by law?

We first consider whether the President Pro Tempore's and the Speaker's Offices are created by law. In *Dorenfield*, the members of the Texas Relief Commission were to be appointed pursuant to statutory authority. *Dorenfield*, 73 S.W.2d at 84, 85. In *Knox*, the court explained that the state hospital superintendent's position was a "public office when it [was] created by law." *Knox*, 141 S.W.2d at 700. Though that court was discussing authorities distinguishing public officers from public employees, the court concluded based on those authorities, the constitution, and the statutes, the superintendent was "inescapabl[y] . . . an officer of the State." *Id.* In both cases, but particularly in *Knox*, the courts considered whether an office was created by law as part of its determination of whether the officeholder was an officer of the State for purposes of article XV, section 7. *See Dorenfield*, 73 S.W.2d at 84, 85; *Knox*, 141 S.W.2d at 700.

There can be no doubt that both the President Pro Tempore and the Speaker fulfill this criteria for purposes of our analysis. The President Pro Tempore's office is elected and the duties

of the office prescribed in article III, subsection 9(a), and the Speaker is elected as described in subsection 9(b) of that same provision. TEX. CONST. art. III, § 9(a)–(b). Both offices are established by the Texas Constitution. Although both the President Pro Tempore and the Speaker satisfy the criterion of holding a position created by law, it is doubtful that this element, alone, would suffice to establish state officer status for purposes of impeachment.

### b.    Do the President Pro Tempore and the Speaker exercise sovereign or governmental functions?

We next analyze whether the President Pro Tempore and Speaker exercise sovereign or governmental functions for purposes of article XV, section 7 and chapter 665 of the Government Code. Although *Dorenfield* and *Knox* each credit this consideration as relevant to the state-officer analysis, neither case provides a thorough analysis of what constitutes a "sovereign function." At most, these cases—particularly *Knox*—provide a benchmark for the level of sovereign functions that might indicate that a person is a state officer. Our assessment will thus focus on whether the duties exercised by the President Pro Tempore and the Speaker rise to the level of the sovereign functions described in *Knox*. *See Knox*, 141 S.W.2d at 700.

The President Pro Tempore's constitutional and statutory authority is primarily, if not solely, provisional. Under article III, section 9(a) of the constitution, the President Pro Tempore performs the Lieutenant Governor's duties when the Lieutenant Governor is absent or when the Lieutenant Governor's office is vacant. *See* TEX. CONST. art. III, § 9(a). The President Pro Tempore would also succeed to the office of Governor if the Governor and Lieutenant Governor were unavailable. *See* TEX. CONST. art. III, § 9(a); art. IV, § 17(a); TEX. GOV'T CODE ANN. § 401.023(a) (Vernon 2005); *see also* TEX. GOV'T CODE ANN. § 303.001(1) (Vernon 2005) (defining "governor for a day ceremony"). Similarly, the Speaker also exercises a provisional role as a possible successor to the Governor should the Governor, Lieutenant Governor, and President Pro Tempore be unavailable. *See* TEX. GOV'T CODE ANN. § 401.023(a)(1) (Vernon 2005).

These provisional duties of the President Pro Tempore and the Speaker do not appear to "involve an exercise of some portion of sovereign power . . . which also are continuing in their nature and not occasional or intermittent." *Knox*, 141 S.W.2d at 700. In fact, by virtue of being provisional, such duties appear to be inherently occasional or intermittent. Because these provisional tasks largely represent the President Pro Tempore's role, a court following *Knox* would likely conclude—at least as to the sovereign-function analysis—that the President Pro Tempore is not a state officer for impeachment purposes under article XV, section 7 and chapter 665 of the Government Code.

If the Speaker's constitutional and statutory authority were likewise limited only to provisional duties, a court applying *Knox* would likely reach the same conclusion and find that the sovereign-function analysis also weighs against the Speaker being a state officer for impeachment purposes. But the Speaker's primary duties and functions are not provisional, and his duties are statewide in scope.

For example, separate and apart from the Speaker's duties as a legislator elected to represent the voters of his district, the Speaker—as Speaker—serves as a member of certain statewide boards and commissions. The Speaker, along with state officers including the Lieutenant Governor, the Attorney General, the Comptroller of Public Accounts, and the Commissioner of the General Land Office, is required to serve on the Legislative Redistricting Board. TEX. CONST. art. III, § 28. The Speaker also serves with the Lieutenant Governor as joint chair of the Legislative Budget Board. TEX. GOV'T CODE ANN. § 322.001(b) (Vernon 2005). And the Speaker is required to serve on the State Preservation Board. *Id.* at § 443.003(a) (Vernon 2004).

In addition to these service duties, the Speaker appoints members of other statewide boards and commissions, including bodies within the Executive Department. *See* TEX. CONST. art. III, § 24a(a)(3) (requiring the Speaker to appoint two members to the Texas Ethics Commission); TEX. GOV'T CODE ANN. § 71.012(5) (Vernon 2004) (requiring the Speaker to appoint one representative to the Texas Judicial Council); *id.* § 322.001(a) (requiring the Speaker to appoint two members of the Legislative Budget Board); *id.* § 443.003(a) (requiring the Speaker to appoint a member of the State Preservation Board); *id.* § 801.104(b) (requiring the Speaker to appoint a representative to the Texas Pension Review Board); *id.* § 815.002 (requiring the Speaker to appoint a trustee of the Texas Employee Retirement System).

Among these statewide roles, the Speaker participates directly in significant aspects of the State's fiscal and governmental management. *See* TEX. GOV'T CODE ANN. §§ 71.012(5) (Vernon 2005), 322.001, .008, .011, .017 (as Legislative Budget Board joint chair, the Speaker oversees the State's budget and state agencies' operations and fiscal affairs); *id.* § 316.005 (the Speaker serves on a Legislative Budget Board committee that adopts constitutionally required limit on growth rate of appropriations in a biennium); *id.* § 481.078(e) (Vernon Supp. 2007) (requiring the Speaker to approve grants from Texas Enterprise Fund for state economic development); TEX. CONST. art. III, § 28 (as one of five members of Legislative Redistricting Board, the Speaker is responsible for redistricting State's senatorial and representative districts when the Legislature does not do so); TEX. CONST. art. V, § 7a(e) (as a Legislative Redistricting Board member, the Speaker is responsible for redistricting State's judicial districts when the Judicial Districts Board does not do so). In particular, the Legislative Budget Board has significant authority over the execution of the State's budget, including the right to require an audit of any State agency at any time. TEX. GOV'T CODE ANN. §§ 322.010–.011(b) (Vernon 2005). The Legislative Budget Board also has authority both to halt the expenditure of state funds to an agency in an emergency, *id.* § 317.002, and to reduce the amount of state funds sent to school districts if there are insufficient funds in the second year of a biennium to fund the original amount. TEX. EDUC. CODE ANN. § 42.253 (Vernon Supp. 2007).

Notably, this level of executive authority assigned to the Speaker under the constitution and the Government Code is not shared by any other legislator. For instance, article III, section 28 of the constitution lists the Speaker, alone among all legislators, as serving on the Legislative Redistricting Board along with a group of executive officers: the Lieutenant Governor, the Attorney General, the Comptroller of Public Accounts, and the Commissioner of the General Land Office. The constitution provides that when the Legislative Redistricting Board takes action, it "shall be in writing and signed by three (3) or more of the members of the Board duly acknowledged as the act

and deed of such Board, and, when so executed and filed with the Secretary of State, shall have force and effect of law." *Id.* The Legislative Redistricting Board's activity is not subject to review, veto, or approval by the Governor, nor is it subject to a vote by the Legislature. *Id.* Such constitutionally-mandated, self-executing authority is a "[d]efinite and specific governmental dut[y] and power[]" imposed upon the Speaker that affects the State as a whole. *Knox,* 141 S.W.2d at 700.

Beyond the scope and significance of his duties, it is also relevant to the sovereign-function analysis that the Speaker performs many of these governmental functions in his own right, exercising discretion without the oversight of others. *See Green v. Stewart,* 516 S.W.2d 133, 135–36 (Tex. 1974) (discussing whether a county tax assessor-collector performs a sovereign function of government); *Aldine,* 280 S.W.2d at 582–83 (noting that one who acts in his own right is largely independent of others' control); *Dunbar v. Brazoria County,* 224 S.W.2d 738, 740–741 (Tex. Civ. App.—Galveston, writ ref'd) (same); *see also* Tex. Att'y Gen. Op. No. GA-0057 (2003) at 3–5 (distinguishing public officer from public employee on the basis of whether the officer performs a sovereign function for the benefit of the public largely independent of the control of others). The Speaker exercises his various appointment and oversight powers largely independent of others' control. *See, e.g.,* TEX. GOV'T CODE ANN. § 71.012(5) (providing no limitation on the Speaker's power to appoint a member of the House to serve on the Texas Judicial Council), *id.* § 322.001(b) (the Speaker is a joint chair with the Lieutenant Governor—an indisputable officer of the state—of the Legislative Budget Board); *id.* § 481.078(e) (Governor may award money appropriated from the Texas Enterprise Fund only with the express written prior approval of the Lieutenant Governor and Speaker). These discretionary duties further demonstrate that the Speaker performs meaningful sovereign functions of government.[14]

Finally, as discussed above, all of these duties are "continuing in their nature and not occasional or intermittent." *See Knox,* 141 S.W.2d at 700. For instance, section 316.004 of the Government Code requires the Legislative Budget Board to meet no later than December 1 of every even-numbered year and begin a series of public meetings that culminate in its transmission of the budget and the general appropriations bill to the Legislature no later than the first week of the next regular session. TEX. GOV'T CODE ANN. §§ 316.004, 322.008 (Vernon 2005); *see also id.* § 322.008(d). Because it requires the Legislative Budget Board to meet as a predicate to the commencement of the session, section 316.004 recognizes that the Board has to meet *between* legislative sessions. *See Hendee v. Dewhurst,* 228 S.W.3d 354, 360–61 (Tex. App.—Austin 2007, pet. denied). As joint chair of the Board, the Speaker necessarily exercises ongoing duties affecting the fiscal management of the State during times the Legislature is not in session. Additionally, article III, section 28 of the constitution makes clear that the Legislative Redistricting Board also functions between legislative sessions. TEX. CONST. art. III, § 28. That Board's formation is not even triggered until the Legislature fails to make an apportionment during the first regular legislative session after the publication of each United States decennial census. *Id.; see also In re Perry,* 60 S.W.3d 857, 860–61 (Tex. 2001) (discussing how the Board "stepped into the Legislature's shoes

---

[14]The *Knox* court also considered it significant that the superintendent's salary was fixed, and not subject to change by the Board of Control. *Knox,* 141 S.W.2d at 700. Because the Speaker does not draw a salary as Speaker, this particular criterion does not bear on our analysis.

after that body failed to act"); *Terrazas v. Ramirez*, 829 S.W.2d 712, 727–28 & n.3 (Tex. 1991) (orig. proceeding) (discussing same structure in detail).

Having taken measure of the nature, scope, and significance of the Speaker's constitutional and statutory duties, we return to the benchmark set by *Knox*. By any standard, the Speaker's role would seem to exceed the scope of the duties performed by the state hospital superintendent in that case. *See Knox*, 141 S.W.2d at 700–701. As described by the *Knox* court, the hospital superintendent's duties included being "custodian of and responsible for state property and state funds." *Id.* at 700. He made semi-annual reports to the Governor regarding monies received and disbursed. *Id.* The *Knox* court found these duties to be "governmental function[s] affecting the public as a whole" and "[d]efinite and specific governmental duties and powers . . . imposed upon him in which the State as a whole is interested"—*i.e.*, they were "sovereign functions" that tended to show that the superintendent was a state officer under article XV, section 7. *See id.* Compared to these duties, there can be little doubt that the Speaker's duties described above are likewise "sovereign functions" for this purpose. Thus, a court applying *Knox* would likely find that the Speaker exercises a sovereign function in that he "discharg[es] strictly a governmental function affecting the public as a whole," *see id.*, which in turn would favor treating him as a state officer.

Some briefs depart from the *Knox* rubric and attempt to apply other authorities in analyzing the Speaker's duties. But unless and until the Texas Supreme Court concludes that *Knox* does not apply in analyzing whether the Speaker and President Pro Tempore are state officers for purposes of impeachment, or provides a different paradigm for analyzing whether they are state officers, we are bound to apply the *Knox* analysis.

Moreover, these other authorities do not appear relevant to the instant question. For example, one brief suggests that a court could decide that the Speaker's duties are analogous to the "superadded duties" performed by the presiding judges of administrative judicial districts, which do not render the presiding judge's position a "new office." *Eucaline Med. Co. v. Standard Inv. Co.*, 25 S.W.2d 259, 261 (Tex. Civ. App.—Dallas 1930, writ ref'd). But in *Eucaline*, the court reasoned that the presiding judge performs functions that "are judicial in nature [and] are not inconsistent with the constitutional duties of the district judge." *Eucaline Med. Co.*, 25 S.W.2d at 261. Because the Speaker's board and commission service and appointment duties, as described above, are not merely legislative in nature, but are, instead, executive in nature, they are not analogous to the "superadded" judicial duties of presiding judges in *Eucaline*. For the same reasons, the Supreme Court of Texas's holding that Legislators appointed to the Tax Survey Committee were not entitled to additional per diem compensation for their work between sessions has no bearing on how the Speaker's duties are classified. *Terrell v. King*, 14 S.W.2d 786, 790–92 (Tex. 1929). The committee members in *Terrell* were merely performing a function of the Legislature during the interim period between sessions. *See id.* at 790 (concluding that the Legislature has authority to maintain committees during the interim between sessions). By contrast, the independent and executive nature of the Speaker's duties transcend his role as a member of the Legislature or a legislative officer.

We also reject the contention that *In re Texas Senate* would be read to conclude that the President Pro Tempore and Speaker remain legislators who are not rendered state officers merely by virtue of their additional duties. *See In re Tex. Senate*, 36 S.W.3d at 120–21. That case

concerned the constitutional mandate that, if the Lieutenant Governor's office becomes vacant, the Senate must elect a Senator to perform the Lieutenant Governor's duties until the next general election. TEX. CONST. art III, § 9(a). The court wrestled with whether the Lieutenant Governor's additional, non-legislator duties removed the Senator elected to perform the Lieutenant Governor's duties from the category of Senate officers. *In re Tex. Senate*, 36 S.W.3d at 120–21. The court concluded that they did not because an individual may be *both* a state officer and a legislative officer. *Id.* at 120. Moreover, the court indicated that it was this Senator's performance of duties assigned to the Lieutenant Governor as a member of the Executive Department that rendered him something more than a Senate officer—even though he would not become an Executive Department officer himself. *See id.* Because the Speaker's board and commission service and appointment duties appear to be more executive than legislative, a court is more likely to conclude that *In re Texas Senate* supports rather than refutes a conclusion that the Speaker, in that capacity, performs sovereign functions or duties distinct from his duties as a legislator.[15]

In sum, applying the sovereign-function analysis set out in *Knox*, we conclude that the Speaker's functions as Speaker are sufficiently sovereign in nature to suggest he is a state officer, especially when compared to the functions of the superintendent of a state hospital found to be sovereign duties under *Knox*.

  **c. Are the President Pro Tempore and the Speaker offices' terms fixed by law?**

We turn to the question of whether the President Pro Tempore and the Speaker serve a term fixed by law. *See Dorenfield*, 73 S.W.2d at 87; *Knox*, 141 S.W.2d at 700. "Where, therefore, the tenure of the office is not fixed by law, and no other provision is made for removal, either by the constitution or by statute, it is said to be 'a sound and necessary rule to consider the power of removal as incident to the power of appointment.'" *See Dorenfield*, 73 S.W.2d at 87 (quoting Mechem on Public Officers, section 445, page 284).[16]

Article III, section 9 provides for the election of the President Pro Tempore and the Speaker:

  (a) The Senate shall, at the beginning and close of each session, and at such other times as may be necessary, elect one of its members President pro tempore, who shall perform the duties of the

---

[15]For this reason, *In re Texas Senate* further rebuts the contention that the Speaker's duties encompass no authority beyond the ordinary scope of a House officer. *See, e.g.*, Geren et al. Brief at 11 ("There is no power that has been given the current Texas Speaker that would result in revising the definition of a state officer under our Constitution so as to now include the Speaker."); Price Supplemental Brief at 2–3 (contending that none of the Speaker's added duties are "inconsistent with a speaker's role as a House officer and none give him 'sovereign duties' that would make him a state officer" under article XV, section 7 of the Texas Constitution).

[16]*Dorenfield* did not consider whether the Speaker or President Pro Tempore were state officers and, consequently, did not apply this standard to their offices. As a result, we cannot determine whether the court would have considered article III, § 11 expulsion as constituting another "provision . . . made for removal." *See Dorenfield*, 73 S.W.2d at 86; *see also* TEX. CONST. art. III § 11.

> Lieutenant Governor in any case of absence or temporary disability of that officer. If the office of Lieutenant Governor becomes vacant, the President pro tempore of the Senate shall convene the Committee of the Whole Senate within 30 days after the vacancy occurs. The Committee of the Whole shall elect one of its members to perform the duties of the Lieutenant Governor in addition to the member's duties as Senator until the next general election. If the Senator so elected ceases to be a Senator before the election of a new Lieutenant Governor, another Senator shall be elected in the same manner to perform the duties of the Lieutenant Governor until the next general election. Until the Committee of the Whole elects one of its members for this purpose, the President pro tempore shall perform the duties of the Lieutenant Governor as provided by this subsection.

> (b) The House of Representatives shall, when it first assembles, organize temporarily, and thereupon proceed to the election of a Speaker from its own members.

TEX. CONST. art. III, § 9(a)–(b); *see also* TEX. GOV'T CODE ANN. § 302.001 (Vernon 2005) (directing the House to elect a Speaker upon convening in regular session with a quorum present unless a majority of the members present decides to defer the election).[17]

Article III, section 9(a) of the Texas Constitution provides that the President Pro Tempore does not hold office for a fixed term: "The Senate shall, at the beginning and close of each session, *and at such other times as may be necessary*, elect one of its members President pro tempore . . . ." TEX. CONST. art. III, § 9(a) (emphasis added). Accordingly, a court would likely conclude the President Pro Tempore lacks the requisite "term fixed by law" described in *Dorenfield*, 73 S.W.2d at 87, and in *Knox*, 141 S.W.2d at 701.

Section 9(b), by contrast, requires the House to elect a Speaker after first assembling and organizing itself temporarily. *See* TEX. CONST. art. III, § 9(b). Some briefs received by this office compare subsection (a), which expressly recognizes that a President Pro Tempore may be elected at any necessary time, with subsection (b), in which the House lacks express authority to elect a Speaker at times other than when the House first assembles. These briefs contend that subsection (b) provides the Speaker with a definite two-year term of office and precludes the House from electing a new Speaker at any time other than after it has first assembled and organized temporarily.[18]

---

[17]The Speaker suggests this statutory provision may unconstitutionally expand the time during which the House may select a Speaker. That determination is not necessary to resolving the questions presented. Therefore, we do not evaluate the constitutionality of that provision.

[18]*See* Speaker's Brief at 13–20; Speaker's Supplemental Brief at 6–11; Keel Brief at 3 n.1; Brief from Honorable Bill Callegari, Chair, Committee on Government Reform, Texas House of Representatives, at 1–2 (Aug. 3, 200[7]); Brief from Honorable Jim Jackson, Texas House of Representatives, to Honorable Greg Abbott, Attorney General of Texas, at 2 (July 30, 2007).

This argument is essentially the doctrine of statutory construction known as *expressio unius est exclusio alterius*, or "the expression of one implies the exclusion of others." *See Mid-Century Ins. Co. v. Kidd*, 997 S.W.2d 265, 273 (Tex. 1999). Though not an absolute rule, the doctrine aids in determining legislative—or in the case of the constitution, the electorate's and the legislature's—intent. *See id.* at 274.

Under this argument, the House shall elect a Speaker *only* "when it first assembles [and] organize[s] temporarily." We note however that the Supreme Court of Texas disfavors reading words into constitutional provisions. *See Damon v. Cornett*, 781 S.W.2d 597, 599 (Tex. 1989) (declining to modify the phrase "member of the Legislature" in article III, section 18 with the word "former").

We presume that all words included and excluded from an enactment are included and excluded purposefully. *See Red River Nat'l Bank v. Ferguson*, 206 S.W. 923, 925 (Tex. 1918). We presume that the Legislature never does a useless act. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981). We generally use the same rules of construction to construe the constitution that we use to construe statutes. Tex. Att'y Gen. Op. No. GA-0293 (2005) at 2 (citing *Booth v. Stippleman*, 61 Tex. 378 (1884)).

Section 9(b) could have mirrored section 9(a) in providing that the Speaker be chosen at the beginning of each session, at the end of each session, and at such other times as necessary. *See* TEX. CONST. art. III, § 9(a)–(b). But section 9(b) does not contain such language. The only reasonable deduction based on the different language is the framers intended the times and occasions upon which the Speaker is to be elected are different than times and occasions upon which the President Pro Tempore is to be elected. The framers demonstrated knowledge and ability about how to structure the election of a President Pro Tempore more than once during a session and thereafter. Those same framers chose not to use a similar structure to elect a Speaker. The significance of that distinction cannot be ignored. We must presume that the language in 9(a) was intended to have an effect; accordingly, we must presume the framers' decision to omit it in section 9(b) was intended to have a different effect.

Thus, the contrasting language of subsections 9(a) and (b) suggests that the Speaker is elected at the commencement of a regular legislative session and serves until such time as the next regular legislative session begins. Article III, section 9(b) has a meaning that is different from section 9(a). We must presume that this difference is intentional and that this difference is a manifestation of voters' and legislators' intent to define when a Speaker serves as Speaker. This difference is demonstrated by the constitutional provisions that require the Speaker to continue serving in that capacity after the Legislature adjourns. *See id.* art. III, § 28. Neither that provision nor article III, section 9(b) nor any other provision provides for the selection of a Speaker at any time other than when the House of Representatives first *convenes*. *See id.* § 9(b). The only conclusion that can be gleaned from the text of the constitution is the framers' intent that the duly elected Speaker continue as Speaker after the regular session ends.

This conclusion has been perpetuated by the Legislature itself. Numerous statutes require the Speaker to serve on statewide boards and commissions, performing significant duties of interest

to the public as a whole, often explicitly when the House is not in session. In fact, the Legislature expressly mandates ongoing service by the Speaker vis-à-vis the Legislative Budget Board and the Preservation Board. *See, e.g.*, TEX. GOV'T CODE ANN. § 316.004 (Vernon 2005). The performance of these significant duties *between* legislative sessions appears to be of no less importance than their performance *during* a legislative session.

Indeed, those ongoing duties implicate another constitutional provision that supplies an end point for the Speakership, which in turn further suggests that a Speaker serves a fixed term. Article XVI, Section 17 provides that "[a]ll officers within this State shall continue to perform the duties of their offices until their successors shall be duly qualified." TEX. CONST. art. XVI, § 17. The Speaker's duties as joint chair of the Legislative Budget Board by law are ongoing at the time that the next Speaker election occurs: the Board is obligated to meet no later than December 1 in the year preceding the next regular session to begin calculating the State's estimated economic growth for budget purposes, TEX. GOV'T CODE ANN. § 316.004 (Vernon 2005), and then to prepare and transmit a copy of the budget of estimated appropriations no later than the fifth day after the session convenes, *id.* § 322.008(c). Thus, because the Speaker has these ongoing Board duties when the next Speaker election occurs at the beginning of the session, and he is constitutionally commanded to continue performing those duties until the next Speaker is "duly qualified," TEX. CONST. art. XVI, § 17, the Speakership must continue until that point. That legally required ending point for the office further indicates that the Speaker serves for a fixed term.

Yet one brief cites article XVI, section 17 for the opposite proposition: unlike other "officers within this State [who] continue to perform the duties of their offices until their successors shall be qualified," the Speaker from a previous regular session does not serve until the succeeding Speaker is selected. *See* Geren et al. Brief at 14 (quoting TEX. CONST. art. XVI, § 17, providing that "[a]ll officers within this State shall continue to perform the duties of their offices until their successors shall be duly qualified"). This brief relies on the fact that, by statute, the Secretary of State or Attorney General initially presides over the House until the election of a new Speaker. *See* TEX. GOV'T CODE ANN. §§ 301.001–.005 (Vernon 2005). Accordingly, this argument proceeds, the "position of Speaker is not embraced by the term 'all officers' in [article 16, section 17 of the Texas Constitution] in that no Speaker continues to preside until his successor is qualified." *See* Geren et al. Brief at 15.

This argument assumes, however, that the Speaker must perform the duties described in sections 301.001–.005 of the Government Code prior to the election of a new Speaker. *See, e.g.*, TEX. GOV'T CODE ANN. § 301.003 (Vernon 2005), *id.* §§ 301.001–.005 (the Secretary of State, or in his absence, the Attorney General shall appoint a clerk to take minutes of House proceedings); *id.* § 301.004 (the Clerk shall administer the official oath to each member-elect). The Speaker does not have a duty to perform those functions; the Secretary of State, Attorney General, or clerk does. *See id.* Nor does any constitutional, common-law, or contradictory statutory provision purport to assign such duties to the Speaker. Moreover, this argument does not account for the fact that, as discussed above, the Speaker is performing other statutory duties in this time frame as a member of the

Legislative Budget Board.[19] Therefore, we do not discern from article XVI, section 17 the inference that the Speaker is not an officer of the state.

Other briefing suggests the differences between sections 9(a) and (b) are better understood in light of when each of the officers at issue was designated to succeed the Governor in the event of a vacancy in that office. The President Pro Tempore was placed in the line of succession at the time the constitution was adopted in 1876. Accordingly, it is suggested the constitutional framers provided in great detail for the President Pro Tempore's role in the event of a vacancy. The Speaker, on the other hand, was not among those officers who might succeed the Governor at the time the constitution was adopted in 1876,[20] and the constitutional framers thus had no commensurate reason to provide the same amount of detail for vacancies in the Speaker's office. *See* Geren et al. Brief at 23–24 (suggesting that section 9(a) provides specifically for replacing the President Pro Tempore because the "framers . . . simply recognized that . . . the [p]resident pro tempore may need to assume the duties of governor"). Under this theory, "[t]he framer[]s['] acknowledgment that the Constitution's provisions for gubernatorial succession might require this eventuality [in subsection 9(a)] can in no way be interpreted as a denial of any removal power that resides in the House [under subsection 9(b)] . . . ." Geren et al. Brief at 24.

This argument is inconsistent with the language of section 9(a) for several reasons. First, section 9(a) does not provide any language indicating that the methodology for selecting a President Pro Tempore has anything to do with the line of succession to the Governor. To the contrary, it articulates reasons for selecting a President Pro Tempore that have nothing to do with the line of succession. For instance, the first sentence states:

> The Senate shall, at the beginning and close of each session, and at such other times as may be necessary, elect one of its members President pro tempore, who shall perform the duties of the Lieutenant Governor in any case of absence or temporary disability of that officer.

TEX. CONST. art. III, § 9(a). The reference to temporary disability obviously has nothing to do with the line of succession. In addition, subsection 9(a) also provides that the President Pro Tempore shall be elected at the beginning and the *close of each session*. TEX. CONST. art. III, § 9(a). Multiple

---

[19]The argument also does not acknowledge the ongoing duties required of the Speaker after the adjournment of the regular legislative session.

[20]The Speaker of the House was not added to the line of those officers designated to succeed the Governor until 1959, when the Legislature adopted Government Code section 401.023(a). *See* TEX. CONST. of 1876, art. III, § 9(a), art. IV, § 16(c) (original version *available at* http://tarlton.law.utexas.edu/constitutions/text/1876index.html); TEX. GOV'T CODE ANN. § 401.023(a) (Vernon 2005); Act of May 8, 1959, 56th Leg., R.S., ch. 232, § 3, 1959 Tex. Gen. Laws 527, 527 (enacting 401.023's predecessor); *see also* TEX. GOV'T CODE ANN. § 401.022 (Vernon 2005) (defining "unavailable"). Under Government Code section 401.023(a), the Speaker exercises the powers and discharges the duties of the office of Governor if the Governor, Lieutenant Governor, and President Pro Tempore of the Senate are unavailable. *See* TEX. GOV'T CODE ANN. § 401.023(a) (Vernon 2005).

occasions for electing the President Pro Tempore seem unnecessary if the intent were focused on line-of-succession contingencies

The line of succession seems more appropriately addressed in the remaining sentences of section 9(a):

> If the office of Lieutenant Governor becomes vacant, the President pro tempore of the Senate shall convene the Committee of the Whole Senate within 30 days after the vacancy occurs. The Committee of the Whole shall elect one of its members to perform the duties of the Lieutenant Governor in addition to the member's duties as Senator until the next general election. If the Senator so elected ceases to be a Senator before the election of a new Lieutenant Governor, another Senator shall be elected in the same manner to perform the duties of the Lieutenant Governor until the next general election. Until the Committee of the Whole elects one of its members for this purpose, the President pro tempore shall perform the duties of the Lieutenant Governor as provided by this subsection.

TEX. CONST. art. III, § 9(a). Thus, the contrast in language between the first sentence of section 9(a) and the only sentence of 9(b) seems to carry great weight.

It is also suggested that Texas Government Code section 302.001 indicates the Speaker is not elected for a fixed term because that section expressly allows the House members to defer electing a Speaker. *See* TEX. GOV'T CODE ANN. § 302.001 (Vernon 2005). Although this argument may be instructive as to when the Speaker's term may begin, it sheds no light on whether, once that term commences, it is fixed.[21]

The Speaker also urges a finding that he serves a definite two-year term because it "is consistent with provisions in [the constitution] establishing that other public officers, including appointed officers, serve fixed terms during which they are subject to removal only in specified circumstances or under specific procedures." *See* Speaker's Brief at 16 (citing TEX. CONST. art. XVI, §§ 30, 30a; *id.* art. V, § 24). This and similar arguments merely beg the question of whether the Speaker *is* a *state* officer and, moreover, whether he is a state officer for purposes of removal from office. Thus they are not conclusive on the question of whether the Speaker serves a fixed term.

The constitution is precise about when the Speaker's term begins—"when [the House] first assembles." *See* TEX. CONST. art. III, § 9(b). Although neither the constitution nor statutes are precise about when the Speaker's term ends, they clearly contemplate—in some instances require—the Speaker to serve past the time when the legislative session adjourns and continue until

---

[21]Also, as addressed earlier, an argument could be made that section 302.001 is unconstitutional to the extent it differs from or alters article III, section 9(b). As noted above, we decline to opine on that question at this time.

the next legislative session begins. The only conclusion that can be drawn from this constitutional and statutory framework is that the Speaker's term begins when the House first assembles for one session and ends when the House first assembles at the beginning of the next session. As a result, and especially in light of the meaningful differences in the constitutional language contained in subsections 9(a) and 9(b), a court would probably conclude the Speaker's term is sufficiently "fixed by law" that it satisfies *Dorenfield* and *Knox*. *See Dorenfield*, 73 S.W.2d at 87; *Knox*, 141 S.W.2d at 701.

### d.    Did the President Pro Tempore and the Speaker take oaths of office or deposit bonds?

Citing *Knox*, the Speaker suggests that his taking a constitutional oath of office—as Speaker—is an indication of a state office. *See* Speaker's Brief at 19–20; *see also Knox*, 141 S.W.2d at 700 (referring to the fact that the superintendent of the San Antonio State Hospital took an oath of office). Though neither the *Knox* court nor the Texas Supreme Court in *Dorenfield* articulated why the oath was of significance in this analysis, and neither explained the weight to be accorded to the oath, it appears to be an indication of state office. *See Knox*, 141 S.W.2d at 700; *Dorenfield*, 73 S.W.2d at 86–87. No brief disputes that the Speaker takes such an oath *as Speaker*—in addition to the oath taken as a representative. TEX. CONST. art. XVI, § 1(a) (prescribing the official oath for "[a]ll elected and appointed officers"). However, taking the constitutional oath of office is but one of several factors indicating whether a particular official is an officer of the state. While *Dorenfield* and *Knox* support the notion that an official oath is an indication of state officer status, those cases do not hold that taking such an oath, standing alone, would be dispositive as to whether an officer is—or is not—a state officer for impeachment purposes. *See Dorenfield*, 73 S.W.2d at 86–87; *Knox*, 141 S.W.2d at 700–01.

For similar reasons, depositing a bond is merely one of several indicia of whether someone is a state officer. *See Knox*, 141 S.W.2d at 700 (including the depositing of a bond in a list of considerations in determining whether someone is a state officer). In fact, the absence of a bond requirement does not negate state-officer status. *See Dorenfield*, 73 S.W.2d at 86 (not including the depositing of a bond from a list of facts considered in determining whether someone is an officer of the state). Many officials who are indisputably state officers are not required to post a bond—Attorney General, Supreme Court Justices, District Court Judges—just to name a few. *See also, e.g.,* TEX. CONST. art. IV, § 1 (listing the Attorney General as an officer of the Executive Department of the State). We find no authority, and no briefs submitted to this office suggest that any statutory or constitutional provision requires the Speaker or President Pro Tempore to post a bond. Considering all of this, it is unlikely a court would place much weight on the bond element when determining whether the President Pro Tempore or Speaker is a state officer for purposes of impeachment.

### e.    Conclusion

A court would likely find the President Pro Tempore is not an officer of this state for purposes of removal from office under article XV, section 7 of the Texas Constitution and Government Code chapter 665. We base this conclusion on our determination that the President Pro

Tempore does not perform sovereign functions except provisionally, in the absence of the Lieutenant Governor, and does not serve for term fixed by law. *See Dorenfield*, 73 S.W.2d at 87; *Knox*, 141 S.W.2d at 700. We do not believe a court would conclude that taking a constitutional oath, absent other indicia of state office, is not sufficient to establish a position as an officer of this state for purposes of removal from office.

On the other hand, we believe a court would likely determine the Speaker is a state officer on the bases that the person elected to this position by the House members performs sovereign functions of this state and more likely than not serves a fixed term as provided by law. No one denies that the Speaker, as Speaker, took an oath. Because we find no statutory requirement that the Speaker post a bond, a court is likely to find the posting or absence thereof to be a relatively insignificant consideration in this analysis.

The sovereign functions performed by the Speaker seem greater in weight and scope than those performed by the state hospital superintendent in the *Knox* case, in which the court concluded the superintendent was a state officer under article XV, section 7 based on his duties of receiving and disbursing state monies and being responsible for state property. *Knox*, 141 S.W.2d at 700. Also, the meaningful substantive difference between subsections 9(a) and 9(b) favor the Speaker having a term of office that is consistent with the fixed-by-law discussion in *Dorenfield* and *Knox*. *See Dorenfield*, 73 S.W.2d at 87; *Knox*, 141 S.W.2d at 700. Based principally on the sovereign function and fixed term considerations and bolstered by the Speaker's oath, we conclude the Speaker is likely a state officer for purposes of impeachment under chapter 665.

As discussed throughout, however, we are mindful of the lack of guidance in both the applicable enactments and the case law analyzing those provisions. Neither the Texas Constitution nor our statutes provide a clear definition of "state officer" for purposes of whether the President Pro Tempore or Speaker is such an officer for purposes of impeachment. Nor do those provisions provide or suggest clear guidance in this analysis.

Additionally, Texas cases do not answer whether the Speaker and President Pro Tempore are state officers for purposes of impeachment under chapter 665, and the cases discussing whether an officer is a state officer for purposes of trial and removal from office under article XV, section 7 are similarly vague. In the end, the most applicable cases provide only a multi-part analytical framework to analyzing whether an officeholder is a state officer subject to impeachment.

B.     **May the President Pro Tempore and the Speaker be removed from office only as provided in article XV, section 7 of the Texas Constitution?**

You next ask whether "state officers" are "subject to removal only as provided in Article 15, Section 7 of the Texas Constitution." Request Brief at 1. Because we have concluded the President Pro Tempore is not likely a state officer under article XV, section 7 or chapter 665, we conclude he or she may be removed from office by means other than those prescribed in article XV, section 7 and chapter 665 (enacted pursuant to article XV, section 7). Because we conclude the Speaker *is* likely to be found a state officer, he may be removed pursuant to article XV, section 7. But as we explain below, he may also be subject to lawful removal by other modes.

As already described, article XV, section 7 of the constitution provides, "The Legislature shall provide by law for the trial and removal from office *of all officers of this State*, the modes for which have not been provided in this Constitution." Tex. Const. art. XV, § 7 (emphasis added). In contrast to the article XV, section 2 list of officers over whose impeachment trial the Senate shall preside, section 7 directs the Legislature to provide for "trial and removal" of all officers of the state for whom the constitution does not provide a mode of removal. *Id.* §§ 2, 7.

The Legislature enacted chapter 665 of the Government Code pursuant to article XV, section 7. *See* TEX. CONST. art. XV, § 7 interp. commentary (Vernon 1993) (noting that article 5961 of the Revised Civil Statutes—the predecessor statute to section 665.007, Texas Government Code—was enacted pursuant to chapter article XV, section 7). The Legislature provided that "state officers . . . may be removed from an office or a position by impeachment in the manner provided by the constitution and this chapter [665]." TEX. GOV'T CODE ANN. § 665.002 (Vernon 2004). The plain language of section 665.002, then, authorizes impeachment under procedures provided in the constitution and chapter 665 itself.[22]

After setting out impeachment procedures in other sections of chapter 665, the Legislature provided that "[t]he remedy of impeachment as provided in this chapter is cumulative of all other remedies regarding the impeachment or removal of public officers." TEX. GOV'T CODE ANN. § 665.007 (Vernon 2004). This provision acknowledges methods of removal of officers other than by the procedures for impeachment under the constitution and in chapter 665, and makes clear that impeachment is cumulative of such other methods of removal. The Speaker acknowledges this in his brief. In describing the duration of his term of office, the Speaker urges he "is entitled to serve for the period to which [he was] elected by the members of [the House] under TEX. CONST. art. III, § 9, unless the member is appropriately expelled by the relevant chamber or removed by impeachment or by another method that may be enacted under TEX. CONST. art. XV, § 7." Speaker's Brief at 19. Because impeachment is cumulative, it is inherently not the exclusive authorized procedure for removal of the Speaker or the President Pro Tempore, regardless of whether they are officers of the State.

---

[22]*See* Brief from Rayford Price, Rayford Price & Associates, at 2–3 (July 23, 2007) [hereinafter Price Brief] (contending that, because the impeachment process requires both chambers to take some action, the situation could arise in which the House votes to impeach its Speaker but the Senate does not convict, leaving the House in a difficult situation); *accord* Geren et al. Brief at 7. The Speaker contends that "nothing in the Constitution requires an impeached Speaker to be tried by the Senate." Speaker's Supplemental Brief at 13. The Speaker's assertion does not comport with article XV or chapter 665 of the Government Code. Article XV, section 7 authorizes the Legislature to establish modes of removal—including impeachment—for officers not listed in article XV, section 2. Pursuant to that authority, the Legislature enacted section 665.002 of the Government Code. That statute provides for "impeachment in the manner provided by the Constitution and [Chapter 665]." Under both provisions, an impeached Speaker would be tried by the Senate. *See also Ferguson v. Maddox*, 263 S.W. 888, 890 (Tex. 1924) (stating that in matters of impeachment, each chamber has "separate plenary power and jurisdiction in relation to matters of impeachment: The House the power to 'impeach,' that is, to prefer charges; the Senate the power to 'try' those charges."). *See generally* Tex. Att'y Gen. Op. No. 0-898 (1939) at 3–4 (further detailing impeachment procedures). Under section 665.021, therefore, state officers who are subject to impeachment under chapter 665 are tried by the Senate.

In addition to the remedies authorized by article XV, the constitution allows each chamber to expel a member if two-thirds of the chamber consents. *See* TEX. CONST. art. III, § 11 ("Each House may determine the rules of its own proceedings, punish members for disorderly conduct, and, with the consent of two-thirds, expel a member, but not a second time for the same offense."). Thus, articles III and XV refer to different remedies, one for legislators and another for state officers, respectively. This explains why the constitution contains a section on impeachment and removal in article XV, and an exclusion section in article III. *See Red River Nat'l Bank*, 206 S.W. 925 (courts presume that words are included in an enactment purposely).

Moreover, chapter 665 of the Government Code seems to accomodate article III expulsion by providing that "[t]he remedy of impeachment as provided in this chapter [665] is cumulative of all other remedies regarding the impeachment *or removal* of public officers." *See* TEX. GOV'T CODE ANN. § 665.007 (Vernon 2004) (emphasis added). If the Speaker were expelled from his House seat, it follows that he would also, effectively, be removed from the Speakership because the Speaker must be a member of the House. *See* TEX. CONST. art. III, § 9(b) ("The House of Representatives shall, when it first assembles, organize temporarily, and thereupon proceed to the *election of a Speaker from its own members.*") (emphasis added). Similarly, if the President Pro Tempore were expelled from his Senate seat, it follows that he would also, effectively, be removed from the President Pro Tempore position because the President Pro Tempore must be a member of the Senate. *Id.* § 9(a) ("The Senate shall . . . elect one of its members President pro tempore . . .").

Also, the House or Senate might elect to "exclude from office" a member, including one elected Speaker or President Pro Tempore, on the grounds that a member has been "convicted of bribery, perjury, forgery, or other high crimes." *See* TEX. CONST. art. XVI, § 2 ("Laws shall be made to exclude from office persons who have been convicted of bribery, perjury, forgery, or other high crimes."). As in the case of expulsion, such an exclusion would seem to "exclude from office" the Speaker or President Pro Tempore. *See id.*

For these reasons, if a Speaker were to be impeached and convicted under chapter 665 and the constitution, the Senate's judgment would appear to provide the consequence of the impeachment conviction. TEX. CONST. art XV, § 7; TEX. GOV'T CODE ANN. § 665.002 (Vernon 2004). That consequence could include removal from the Speakership. Alternatively, the Speaker or President Pro Tempore may be removed from those offices outside the scope of impeachment, as a consequence of being expelled or excluded as a member of the Legislature, or any other lawful mode of which impeachment is cumulative.

## II.    What is the Effect of Removing the Speaker?

You next ask:

> If you conclude that . . . the Speaker of the Texas House of Representatives and the President Pro Tempore of the Texas Senate are subject to removal only by impeachment or other trial and removal proceeding under Article 15, Section 7 of the Texas Constitution, what is the effect of the impeachment of either of these

officers?  That is, does impeachment only remove them from the legislative office of Speaker or President Pro Tempore, or does it expel them from membership in the House/Senate in a manner different from, and inconsistent with, Article 3, Section 11 of the Texas Constitution?

*See* Request Brief at 1.

First, as already noted, we do not conclude the Speaker or the President Pro Tempore may be removed only be means of impeachment under article XV, section 7.

Second, concerning the effect of impeachment, Texas Government Code, section 665.002 provides that state officers may be impeached in the manner provided in the constitution and chapter 665. TEX. GOV'T CODE ANN. § 665.002 (Vernon 2004) (enacted pursuant to article XV, section 7). That section also provides that an "individual may be removed from an office or a position by impeachment." *Id.*

Article XV, section 4 of the Texas Constitution provides, "Judgment in cases of impeachment shall extend only to removal from office, and disqualification from holding any office of honor, trust or profit under this State." TEX. CONST. art. XV, § 4.  Therefore, if the Senate convicted the Speaker[23] on articles of impeachment and entered judgment pursuant thereto, that judgment could extend to removal of the Speaker from that position.

Note, however, that the word "may" in section 665.002, and the word "extend" in section 4 imply that while the Senate's judgment can include removal and disqualification of the impeached officer, it does not imply that removal and disqualification are required. *See Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000) (presuming that the language of the Texas Constitution is carefully selected, courts construe its words as they are generally understood and rely heavily on the plain meaning of the constitution's literal text); *see also* WEBSTER'S NINTH NEW COLLEGE DICTIONARY 439 (1990) (defining "extend" as "to spread or stretch forth . . . to stretch out to fullest length . . . to exert (oneself) to full capacity").  Therefore, a Speaker could be impeached and convicted on articles of impeachment, but the judgment against him could provide a sanction less severe than removal or disqualification.  In other words, "impeachment" would not necessarily remove the Speaker from that state or legislative office.

## III.    If the Speaker is Removed From Office, May the House Elect a New Speaker?

If the Speaker were removed from that office "by any legal means" during a session, you ask whether the House has the power to select a new Speaker or whether it must "continue its operations in the absence of" a Speaker, "in apparent conflict with Article III, Section 9 of the Texas Constitution." Request Brief at 1.

---

[23]We reference only the Speaker, and not the President Pro Tempore, in the discussion concerning impeachment because the President Pro Tempore is not subject to impeachment.

We look first to the Texas Constitution for guidance on this issue. We previously explained that the constitution provides for the election of a Speaker after the House first assembles and temporarily organizes. The constitution is silent about electing a Speaker at any other point.

Moreover, as we also discussed, we must give meaning to the textual differences between article III, section 9(a), which governs the President Pro Tempore's election, and article III, section 9(b), which governs the Speaker's election. Subsection (a) expressly provides that the Senate may elect a President Pro Tempore at multiple times. TEX. CONST. art III, § 9(a). But subsection 9(b) does not confer the same authority on the House in electing a Speaker. *Id.* § 9(b). We must presume that the inclusion of that language in section 9(a) and its omission from section 9(b) were deliberate and intended to have an effect. *See Spradlin*, 34 S.W.3d at 580; *Cameron*, 618 S.W.2d at 540; *Red River Nat'l Bank*, 206 S.W. at 925. We cannot read into section 9(b) any language that the House may elect a Speaker at other times. *See Damon*, 781 S.W.2d at 599.[24]

We also find nothing in any statute that authorizes the election of a new Speaker if the incumbent Speaker is legally removed. Section 302.001 of the Government Code mirrors article III, section 9(b), providing for the election of a Speaker "[w]hen the house of representatives first convenes in regular session and a quorum is present and has been qualified." TEX. GOV'T CODE ANN. § 302.001 (Vernon 2005). Although that section also purportedly permits the House to vote to defer the Speaker election, any such deferral—if constitutional[25]—expressly applies only to the initial election of a Speaker when the regular session first convenes. *Id.* Nothing in this section authorizes a Speaker election following *removal* of an incumbent Speaker.

In the absence of any constitutional or statutory directive on this point, some briefs suggest that the House Rules or House precedents could allow election of a new Speaker in the event of a vacancy after the regular session commences.[26] Whether the House would extend these rules and

---

[24]One brief posits that "the plenary power given the House over its own affairs by sections 8, 9, and 11 of article III of the Texas Constitution" confers authority to remove the Speaker and elect a new Speaker at any time. Geren et al. Brief at 13. But none of the three provisions cited grants authority to elect a Speaker at any time other than after the House first assembles and temporarily organizes. TEX. CONST. art III, § 9(b). Section 8 appoints the House as "the judge of the qualifications and election of its own *members*." *Id.* § 8 (emphasis added). This authority regarding elections to *membership* in the House in no way addresses the election of the Speaker. As noted, section 9 is the only section in article III that speaks to this question, and it provides for a Speaker election after the House first assembles and temporarily organizes. *Id.* § 9(b). Section 11 generally permits each House to "determine the rules of its own proceedings." *Id.* § 11. But this general authority regarding House affairs cannot trump the specific mandates of section 9 dealing with the election of the Speaker. *San Antonio & Aransas Pass Ry. Co. v. State*, 128 Tex. 33, 42, 95 S.W.2d 680, 686 (1936) (explaining construction canon that specific constitutional provisions control over general ones); *Byers v. Patterson*, 219 S.W.3d 514, 522 (Tex. App.—Tyler 2007, no pet.) (same). Finally, as we previously acknowledged, section 11 does give the House authority to expel a member—even one who occupies the Speaker's office—but nothing in that clause addresses the election of a new Speaker in that circumstance.

[25]Again, we express no opinion on the constitutionality of this deferred-election provision.

[26]For example, Representative Callegari states in his brief that, although he believes that article III, section 9(b) identifies the only "temporal juncture where it is appropriate for the House to elect a Speaker," he also believes that the House may adopt rules to anticipate a Speaker's "unanticipated departure" because of "death, illness, or even

(continued...)

precedents to hold a new Speaker election in the situation you describe is, of course, a matter for the House to decide in the first instance. We simply note that we can find no Texas authority that authorizes these practices.

We acknowledge that some briefs contend that the House also has a Speaker Pro Tempore, whose office is not established by the constitution or statutes but by House rule. You do not ask, and we do not address, whether the Speaker Pro Tempore, who is not elected by the House, becomes Speaker if the Speaker is removed from the Speaker's office. *Cf.* TEX. CONST. art. III, § 9(a) (directing the President Pro Tempore of the Senate, in the event of a vacancy, to convene a Committee of the Whole Senate to elect a new Lieutenant Governor). *See generally* Request Letter.

Finally, if the House were to proceed without a Speaker in the event of a vacancy, we do not agree with your suggestion that those circumstances would "conflict with Article III, Section 9 of the Texas Constitution." Request Brief at 1. With respect to the Speaker, article III, section 9 contains only one requirement: that the House elect the Speaker after it first assembles and temporarily organizes. TEX. CONST. art III, § 9(b). That section says nothing about the House's operations if the Speaker's office thereafter becomes vacant.

## IV.    Does the Speaker Have Unlimited Ability to Refuse to Recognize House Members?

You ask finally whether the House rules "effectively give the Speaker unlimited ability to prevent his removal (by simply refusing to recognize members for the required motions)." Request Brief at 1. The question asks this office to decide matters that are internal to the House.[27] Moreover, the question would require this office—in violation of the constitutional separation of powers—to construe House rules that have been adopted by the House in accordance with its constitutional authority to "determine the rules of its own proceedings." *See* TEX. CONST. art. III, § 11.

---

[26](...continued)
resignation." Callegari Brief at 1–2. *See also* Price Brief at 4 (suggesting that future House rules could provide for replacement of removed Speaker); Pitts Brief at 8-9 (relying on parliamentary manuals for proposition that the House may elect a new Speaker in the event of a vacancy).

And several briefs recount occasions when the Speaker's office became vacant mid-session and the House elected a new Speaker to fill the vacancy. *See, e.g.*, Speaker Brief at 32 (citing mid-session speaker elections in 1846, 1857, 1861-63, 1909, and 1972); McCall Brief at 4 (citing 1871, 1909, and 1972 mid-session elections); Geren et al. Brief at 8-9 (same). These briefs do not, however, cite any constitutional or statutory provision that specifically authorized those elections.

We also note that there are several instances in which a new Speaker has been elected after a Speaker resigns. *See, e.g.*, H.J. of Tex., 62d Leg., 2d C.S. 3-32 (1972) (Speaker Price elected after Speaker Mutscher resigned); H.J. of Tex., 31st Leg., 1st C.S. 6–7 (1909) (Speaker Marshall elected after Speaker Kennedy resigned); H.J. of Tex., 12th Leg., R.S., 1480, 1484 (1871) (election of Speaker Sinclair following adoption of resolution that Speaker's office was vacant).

[27]*See* Brief from Honorable Jodie Laubenberg, Vice-Chair, Committee on Public Health, Texas House of Representatives at 1 (Aug. 3, 2007) (arguing political reasons for attacks on Speaker Craddick); Brief from Honorable Dan Flynn, Texas House of Representatives, to Honorable Greg Abbott, Attorney General of Texas, at 1 (July 25, 2007).

Article II, section 1 expressly prohibits any person in one department from exercising a "power properly attached to either of the others" except as the constitution expressly permits. TEX. CONST. art. II, § 1. Article III, section 11 of the constitution plainly delegates the determination of a chamber's rules of procedure to that chamber. *See id.* art. III, § 11.[28] Because of the constitutional separation-of-powers doctrine, this office—a part of the Executive Department—historically has not construed a legislative chamber's rules of procedure. *See* TEX. CONST. art. III, § 11; Tex. Att'y Gen. Op. No. H-55 (1973) at 4 (declining to construe House rules);[29] *cf.* Tex. Att'y Gen. Op. No. JC-0501 (2002) at 4 (declining to consider whether proposed legislation falls within the jurisdiction of a particular House committee because of the House's authority to establish its own rules). Accordingly, this office will adhere to these precedents and constitutional mandates in declining to answer questions requiring an Executive Department ruling on House rules.

For the same reasons, this office will not review a parliamentary decision that the Speaker made in the most recent legislative session. Any such review as posed by your request would require us to resolve fact questions, a task in which this office does not engage. *See* Tex. Att'y Gen. Op. No. GA-0446 (2006) at 18 ("Questions of fact are not appropriate to the opinion process.").

---

[28]*See also* Brief from Honorable Terry Keel, Parliamentarian, Texas House of Representatives, at 2–3 (July 20, 2007). As Parliamentarian Keel explains, the House adopts its rules at the beginning of each session and should debate public-policy considerations, legal arguments, and practical consequences at that time. *Id.* at 4.

[29]*See also* Brief from Honorable Warren Chisum, Chair, Committee on Appropriations, Texas House of Representatives, at 1–2 (July 20, 2007) (stating that the Attorney General is being asked to construe rules, which he should not do); Callegari Brief at 1 (stating that "as a matter of propriety and legislative prerogative," the Attorney General should leave the issue to the appropriate chamber to resolve); Laubenberg, Brief at 1 (stating that a chamber should "shoulder the responsibility for" its own rules).

## S U M M A R Y

The Texas Constitution and state statutes are silent as to whether the President Pro Tempore of the Senate and the Speaker of the House are "officers of this State" for purposes of removal from office under article XV, section 7 of the Texas Constitution. Thus, any interpretation of this question must be governed by court decisions. The Texas Supreme Court has issued one opinion and adopted one opinion concerning article XV, section 7 removal—the *Dorenfield* and *Knox* cases. Although neither decision is a model of clarity, they are the best authority available.

In both *Dorenfield* and *Knox*, the courts found the officers in question—the San Antonio State Hospital Superintendent and a member of the Texas Review Commission—to be state officers. Although not purporting to lay out an exhaustive list of potential factors, the two decisions examined, *inter alia*, whether the officials' offices were created by law, whether the officers performed sovereign or governmental functions that affect the public as a whole and are continuing in their nature, whether they served terms fixed by law, and whether they took constitutional oaths of office.

Applying this analysis, we believe a court would likely conclude that the President Pro Tempore of the Senate is not a state officer. Although the President Pro Tempore's office is created by law and requires a constitutional oath, the office's relevant duties are primarily provisional in nature, having effect only in the absence of the Lieutenant Governor, and the term of office is not fixed by law.

Applying the same analysis, however, a court would likely conclude that the Speaker of the House is a state officer. The Speaker's office is created by the Texas Constitution. The Speaker performs numerous sovereign and governmental functions that affect the general public, including the substantial and ongoing statutory responsibility of serving as Joint Chair of the Legislative Budget Board. The Speaker most likely serves for a fixed term: his tenure explicitly begins when the House first assembles and temporarily organizes, and, due to his ongoing duties imposed by law, must continue until the next session commences. Finally, the Speaker takes the constitutional oath of office in addition to his oath as a House member.

The Texas Supreme Court has concluded that a Texas Review Commission member and the Superintendent of the San Antonio State Hospital are state officers. Given those holdings, we believe a

court would likely conclude that the Speaker's substantial sovereign and governmental functions affecting the general public as a whole exceed those exercised by the Texas Review Commission member and the Superintendent of the San Antonio State Hospital and, as such, the Speaker is an officer of the state.

As a state officer, the Speaker is subject to impeachment under article XV, section 7 of the Texas Constitution. But the fact that the Speaker can be impeached under article XV, section 7 does not mean that impeachment is the *only* means of removing a Speaker.

At a minimum, both the Speaker and the President Pro Tempore are subject to expulsion under article III, section 11 of the Texas Constitution or exclusion under article XVI, section 2 of the Texas Constitution. Indeed, section 665.007 of the Government Code expressly provides that "the remedy of impeachment as provided in this chapter is *cumulative* of all other remedies regarding the impeachment or removal of public officers." TEX. GOV'T CODE ANN. § 665.007 (Vernon 2004) (emphasis added). Accordingly, impeachment is not the only way to remove a Speaker.

If the Speaker were impeached, the Texas Constitution allows the impeachment judgment to extend to, but need not include, removal from office or disqualification from holding office. And if the Speaker were legally removed from office, article III, section 9(b) of the Texas Constitution—on its face—neither requires nor precludes the election of a new Speaker by the House.

Finally, this office will adhere to the Texas Constitution's separation of powers doctrine and longstanding precedent in declining to answer questions requiring an interpretation of Senate and House Rules or questions regarding legislative parliamentary decisions.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee